**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-- - - - - - -- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| LUKASZ RUDKOWSKI, | : |
| | : |
| *Plaintiff*, | : Index No. 17-cv3647(DAB)(JCF) |
| | : |
| | : ECF Case |
| vs. | : |
| | : |
| | : |
| | : |
| MIC NETWORK, INC., | : |
| | : |
| *Defendant.* | : |

-- - - - - - - - - - - - - -- - - - - - - - - - - - - - - - - - -x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE COMPLAINT**

Liebowitz Law Firm PLLC
Richard P. Liebowitz
Yekaterina Tsyvkin
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
Tel: (516) 233-1660
Fax: (516) 612-2740
kt@liebowitzlawfirm.com
rl@liebowitzlawfirm.com

*Attorneys for Lukasz Rudkowski*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………...ii

PRELIMINARY STATEMENT ……………………………………………………………1

STATEMENT OF FACTS ……………………………………………………………………3

ARGUMENT …………………………………………………………………………………..4

I.      COMPLAINT ADEQUATELY PLEADS COPYRIGHT INFRINGEMENT……….5

    A.  MIC's Use of the Photograph Was Not De Minimis …………………………5

II.     COMPLAINT IS NOT BARRED BY FAIR USE…………………………….…….8

    A.  Courts Warn About Deciding On Fair Use On a Motion to Dismiss…………….8

    B.  Fair Use Has to Be Evident From a Side-by-Side Analysis ……………………10

    C.  Fair Use Defense Lacks Merit …………………………………………………..11

        1.  Character and Purpose of the Use …………………………………………...12

            a.  First Factor Does Not Favor a Finding of Transformative Use…………13

            b.  Defendants' Commercial Nature Favors the Plaintiff …………………..15

        2.  Second Factor is Neutral……………………………………………………..15

        3.  Third Factor Does Not Favor a Finding of Fair Use…………………………15

        4.  Fourth Factor Does Not Favor a Finding of Fair Use………………………..17

III.    THE INFRINGED WORKS HAVE BEEN SUBSTANTIALLY IN COMPLIANCE
      WITH SECTION 411(A) OF THE COPYRIGHT ACT ……………………………17

IV.     PLAINTIFF HAS SUFFICIENTLY PLED THE CLAIM AT THIS EARLY
      STAGE…………………………………………………………………………………21

CONCLUSION………………………………………………………………………………..22

## TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*A Star Group, Inc. v. Manitoba Hydro*,
    621 Fed. Appx. 681(2d Cir. July 27, 2015)……………………………………………20

*Amini Innovation Corp. v. KTY Intern. Marketing*,
    768 F.Supp.2d 1049 (C.D.Cal.2011)…………………………………………………… .21

*Arista Records, LLC v. Doe 3*,
    2010 WL 1729107 (2d Cir. 2010) …………………………………………………………5

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) …………………………………………………………….4, 5

*Authors Guild, Inc. v. HathiTrust*,
    755 F.3d 87 (2d Cir. 2014) ………………………………………………………..12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) …………………………………………………………….4, 5

*Blagman v. Apple Inc.*,
    No 12-cv-5453 (ALC) (JCF), 2013 WL 2181709 (S.D.N.Y. May 20, 2013) …………..21

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006) …………………………………………………….9, 15

*BMG Music v. Gonzalez*,
    430 F.3d 888 (7th Cir.2005) ……………………………………………………10

*Browne v. McCain*,
    612 F. Supp. 2d 1125 (C.D. Cal. 2009)……………………………………………10

*Brownmark Films, LLC v. Comedy Partners*,
    682 F.3d 687 (7th Cir.2012) …………………………………………………....9, 10

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*,
    87 F. Supp. 3d 499 (S.D.N.Y. 2015)…………………………………………...8, 12, 17

*Cariou v. Prince*,
    714 F.3d 694 (2d Cir. 2013) …………………………………………………12, 15

*Chevrestt v. Am. Media, Inc.*,
    No. 16 CIV. 5557, 2016 WL 4557318 (S.D.N.Y. Aug. 31, 2016) ……………………...18

*Coleman v. ESPN, Inc.,*
  764 F.Supp. 290(S.D.N.Y.1991) …………………………………………………21

*Crane v. Poetic Prods.,*
  549 F.Supp.2d 566 (S.D.N.Y.2008) …………………………………………………7

*David Young-Wolff v. McGraw Hill Companies*,
  2014 WL 349711 (Jan. 14, 2014) …………………………………………………5, 21

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,*
  307 F.3d 197(3d Cir.2002)……………………………………………………………6

*Dyer v. V.P. Records Retail Outlet, Inc.,*
  No. 05 CIV. 6583 (WHP), 2008 WL 2876494 (S.D.N.Y. July 24, 2008)………………6

*eScholar, LLC v. Otis Educ. Sys., Inc.,*
  No. 04 CIV. 4051 (SCR), 2005 WL 2977569 (S.D.N.Y. Nov. 3, 2005)…………………8

*E. Gluck Corp. v. Rothenhaus,*
  585 F. Supp. 2d 505 (S.D.N.Y. 2008) …………………………………………………9

*Fitzgerald Pub–Co., Inc. v. Baylor Pub. Co., Inc.,*
  807 F.2d 1110(2d Cir.1986) …………………………………………………………21

*Gottlieb Dev. LLC v. Paramount Pictures Corp.,*
  590 F.Supp.2d 625 (S.D.N.Y.2008) ………………………………………………...6

*Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*,
  No. 15-CV-4244 (JGK), 2016 WL 4747281 (S.D.N.Y. Sept. 12, 2016) ……………......9

*Harper & Row Publishers, Inc. v. Nation Enters.,*
  471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) ………………………………13

*Haven v. Time Warner, Inc.,*
  896 F. Supp. 141 (S.D.N.Y. Aug. 17, 1995)……………………………………………18

*Hoehling v. Universal City Studios, Inc.,*
  618 F.2d 972 (2d Cir. 1980) …………………………………………………………....8

*Katz v. Chevaldina,*
  900 F. Supp. 2d 1314 (S.D. Fla. 2012) ………………………………………………10

*LaChapelle v. Fenty*,
  812 F. Supp. 2d 434 (S.D.N.Y. 2011)…………………………………………………9

*Loussier v. Universal Music Group, Inc.,*

214 F.R.D. 174 (S.D.N.Y.2003) ……………………………………………………21

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.,*
709 F.3d 129 (2d Cir.2013) …………………………………………………………5

*Mktg. Tech. Sols., Inc. v. Medizine LLC,*
No. 09 CIV. 8122 (LMM), 2010 WL 2034404 (S.D.N.Y. May 18, 2010)…………… 7

*Monge v. Maya Magazines, Inc.,*
688 F.3d 1164 (9th Cir.2012) ………………………………………………………13

*M. Shanken Commc'ns, Inc. v. Cigar500.com,*
No. 07 CIV. 7371 (JGK), 2008 WL 2696168 (S.D.N.Y. July 7, 2008) ………………9

*N. Jersey Media Grp. Inc. v. Pirro,*
74 F. Supp. 3d 605 (S.D.N.Y. 2015) …………………………………………………12-13

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,*
166 F.3d 65 (2d Cir. 1999)……………………………………………………………..6

*NXIVM Corp. v. Ross Inst.,*
364 F.3d 471(2d Cir.2004)……………………………………………………………17

*Oban US, LLC v. Nautilus, Inc.,*
2014 WL 2854539 (D. Conn. Jun. 23, 2014) …………………………………………19

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.,*
712 F.3d 705 (2d Cir. 2013) ………………………………………………………4

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,*
602 F.3d 57 (2d Cir.2010) …………………………………………………………..4

*Playboy Enters. Int'l v. Mediatakeout.com LLC,*
2016 WL 1023321 (S.D.N.Y. Mar. 8, 2016)……………………………………...9

*Psihoyos v. John Wiley & Sons, Inc.,*
F.3d 120 (2d Cir. 2014) ……………………………………………………………20

*Reed Elsevier, Inc. v. Muchnick,*
559 U.S. 154 (2010) …………………………………………………………………...20
*Roe v. Bernabei & Wachtel PLLC,*
85 F. Supp. 3d 89 (D.D.C. 2015) ……………………………………………………10

*Ringgold v. Black Entm't Television, Inc.,*
126 F.3d 70(2d Cir.1997)……………………………………………………………5, 6, 7

*Ruotolo v. City of N.Y.,*
    514 F.3d 184, 188 (2d Cir. 2008)……………………………………………………4

*Sandoval v. New Line Cinema Corp.,*
    147 F.3d 215 (2d Cir.1998) ……………………………………………………6, 7

*SGC Commc'n Res., LLC v. Seminar Ctr., In*c.,
    No. 98 CIV 2724 DC, 2001 WL 274053 (S.D.N.Y. Mar. 20, 2001)…………………..8

*Skinner v. Switzer,*
    131 S. Ct. 1280 (2011) ………………………………………………………..4-5

*Sony BMG Music Entm't v. Tenenbaum,*
    672 F. Supp. 2d 217 (D. Mass. 2009)……………………………………………....10

*Swierkiewicz v. Sorema* N.A.,
    534 U.S. 506 (2002)………………………………………………………….....5

*TCA Television Corp. v. McCollum,*
    151 F. Supp. 3d 419 (S.D.N.Y. 2015) …………………………………………..12

*UMG Recordings, Inc. v. MP3.com, Inc.,*
    92 F.Supp.2d 349 (S.D.N.Y.2000) …………………………………………………9

*Vil v. Poteau,*
    No. 11-CV-11622-DJC, 2013 WL 3878741 (D. Mass. July 26, 2013)…………… …10

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp*.,
    210 F. Supp. 2d 147 (E.D.N.Y. 2002) …………………………………………..18
*Wright v. Warner Books, Inc.*,
    953 F.2d 731 (2d Cir. 1991) …………………………………………………..8-9

**Statutes & Rules**
Fed. R. Civ. P. 8(a)(2) 5…………………………………………………………..5
Fed. R. Civ. P. 12(b)(6)……………………………………………………passim

17 U.S.C. §107………………………………………………………………..passim
17 U.S.C. § 411(a) …………………………………………………....passim
17 U.S.C.A. § 504(c) …………………………………………………21
17 U.S.C. §1202(b) …………………………………………………...passim

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 1357……………..4
2 Nimmer on Copyright § 7.16[B][3][b][ii], at 7-170.2 to 7-171…………………………18 -19

Plaintiff Lukasz Rudkowski ("Rudkowski") respectfully submits this memorandum in opposition to the Defendant MIC Network, Inc.'s (collectively "Defendants" or "MIC") motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Rather than interposing an answer, the Defendant – sophisticated and repeat infringer[1] unsuccessfully attempts to mold the facts of this case to fit its misguided theory.   Contrary to the Defendant's insistence, the facts here point to a straightforward case of copyright infringement. The Defendant copied and displayed a screengrab from the Plaintiff's video clip of violent clashes between two groups.   The screengrab clearly displays a pivotal moment in the confrontation between the protestors and visually conveys the raw violence that took place at the rally.   The Defendant took the heart of the short video clip, without permission, consent or a proper licensing fee and appropriated it to its own end.   Eschewing these facts, the Defendant misguidedly relies on the doctrine of *de minimis* use, and failing that, it continues to shoehorn inconvenient facts to fit the much maligned and abused doctrine of fair use.   Finally, unable to attack the substantive claims, Defendant challenges the claim procedurally even though that argument fares no better.

---

[1] Defendant has been sued for copyright infringement at least once in this District within the last year. *See Philpot v. Mic Network Inc.,* 1:16-cv-1240 (DLC).

First, the Second Circuit is split on the sufficiency of a pending registration for the purposes of filing suit; second, even if this Court favors the possession of a registration certificate as a prerequisite for filing, the point is likely to be moot by the time the motion is fully briefed; and lastly, in the interest of judicial efficiency, the Court should consider a recent decision in this District that convincingly argues against dismissal on these facts on public interest grounds.   Unable to challenge the copyright infringement claim on the merits or procedurally, the Defendant turns to an argument as curious as it is premature.  Namely, the Defendant deems it appropriate to address willfulness and intent as they pertain to enhanced statutory damages on a pre-answer, pre-discovery motion to dismiss.  This bizarre and groundless argument would hardly be ripe for consideration even at the summary judgment phase, provided a well-developed record, much less on no record at all.   The Court should not countenance the Defendant's kitchen sink defenses, and deny the motion in its entirety.

A recidivist infringer, Defendant deems compliance with the Copyright Act as an unjustified business expense, opting to defy the law as a result of a cynical cost-benefit analysis. Instead of developing the record, the Defendant hides behind cherished and invaluable doctrines, such as Fair Use, in the hopes of concealing the dubious calculus that led to the infringement. Instead of perfecting due diligence in its editorial room and partaking in easily accessible licensing regimes, this Defendant maligns constitutionally protected rights, side-steps content creators, and ultimately undermines the very institutions that the Copyright Act is designed to protect.

Having adequately pled the copyright infringement claim, Rudkowski respectfully asks the Court to deny the Defendant's meritless and premature motion.

**STATEMENT OF FACTS**

Rudkowski is a professional video journalist who is the founder of an independent media organization dedicated to documenting and exposing corruption. *See* Compl. ¶ 5. On April 15, 2017, Rudkowski was covering an event in his professional capacity in Berkley, California. The event was billed as a pro-free speech protest, and officials also expected a significant counter-protest by a group that opposed hate-speech. The two opposing groups of protesters clashed violently. The event garnered significant national attention. During the event, a prominent and controversial figure, Nathan Damigo punched a female protestor. The Plaintiff used his skills and talent as a videographer to clearly record the woman protestor getting punched. *See* Compl. ¶ 7. He had unique access, angle and opportunity to capture the moment. On that same day, Plaintiff published the 4:18 minute video clip of the violent protest on his organization's YouTube channel. *See* Compl. ¶ 8 & Ex. A. He then promptly and timely registered the video with U.S. Copyright Office. *See* Compl. ¶ 10 & Ex. B.

On April 16, 2017, the Defendant published its own article about the clashes at the protest. A screengrab from the video was prominently featured in the article. The featured screengrab depicted the precise moment that Nathan Damigo punched the female protestor. *See* Compl. ¶11 & Ex.C. Also included in that same article is a YouTube link to the entire video. *Id.* The Defendant did not have permission, consent nor a license to publish any part of the video. *See* Compl. ¶12. The article featuring the infringing screengrab describes the surrounding circumstances of the violent protests in Berkley and specifically discusses evidence

3

of assault allegations of against Nathan Damigo for punching the female protestors.  *See* Compl.

& Ex. C.    The infringement continues to be featured online at

https://mic.com/articles/174306/berkeley-riots-video-appears-to-show-white-supremacist-

nathan-damigo-punching-protester#.5mXBVP7a7 (last checked on June 29, 2017).

## **ARGUMENT**

The Courts strongly disfavor and rarely grant motions to dismiss pursuant to FRCP Rule

12(b)(6). 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 1357, at 598**.**

In determining whether the Complaint adequately pled a cause of action, the Court must presume

the all allegations contained therein are true and draws all reasonable inferences in the plaintiff's

favor.  *Ruotolo v. City of N.Y.,* 514 F.3d 184, 188 (2d Cir. 2008).   In fact, the Court must

construe the motion to dismiss in a light most favorable to the non-moving party.  *Pension Ben.*

*Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt.*

*Inc.*, 712 F.3d 705, 732 (2d Cir. 2013).   Furthermore, the Court may refer to judicial experience

and common sense when deciding whether a set of alleged facts constitute a plausible claim

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009). "The court may consider the facts as asserted

within the four corners of the complaint together with the documents attached to the complaint as

exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito*

*Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 64 (2d Cir.2010) (internal quotation and

citation omitted).

In order to survive a motion to dismiss pursuant to FRCP Rule 12 (b)(6), the plaintiff

must have plead a set of factual allegations that, if true, plausibly state a valid claim.  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Even

after the tightening of the pleading standard in *Twombly* and *Iqbal*, the Supreme Court

recognizes that the question is not whether the claim will eventually prevail, "but whether his complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1280, 1296 (2011), citing *Swierkiewicz v. Sorema* N.A., 534 U.S. 506, 514 (2002). The Court further clarifies that "a complaint need not pin plaintiff's claim for relief to a precise legal theory," but rather requires only a plausible "short and plain" statement of the plaintiff's claim. *Id*. To be certain, FRCP 8(a) (2) does not require an exposition of the legal argument. Nor does *Iqbal* and *Twombly* usher in a heightened pleading standard, requiring specific factual allegations.

The Second Circuit, in particular, has made it clear that *Iqbal* and *Twombly* do not stand for the proposition that the Plaintiff may no longer plead "upon information and belief". This is especially true "[1]where the facts are peculiarly within the possession and control of the defendant, or [2] where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 2010 WL 1729107, *8 (2d Cir.). In other words, the pleading may properly rely on facts to which only the defendant has access and on beliefs based on those facts. In *David Young-Wolff v. McGraw Hill Companies*, 2014 WL 349711 (Jan. 14, 2014), the Hon. Judge Wood has specified that "[t]his standard 'does not impose a *probability* requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id* at *2 (citing *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.,*709 F.3d 129, 135 (2d Cir.2013) (quoting *Twombly,* 550 U.S. at 556)) (internal citations omitted).

## I.    COMPLAINT ADEQUATELY PLEADS COPYRIGHT INFRINGEMENT

### A.  MIC's Use of the Photograph Was Not De Minimis

Copying is *de minimis* if a defendant copies protected material "to such a trivial extent as to fall below the quantitative threshold of substantial similarity." *Ringgold v. Black Entm't Television, Inc.,* 126 F.3d 70, 74 (2d Cir.1997). To determine whether the quantity of unauthorized copying is *de minimis,* "courts often look to the amount of the copyrighted work that was copied." *Dyer v. V.P. Records Retail Outlet, Inc.,* No. 05 CIV. 6583 (WHP), 2008 WL 2876494, at *4 (S.D.N.Y. July 24, 2008). "The smallness alone is not enough by itself to avoid liability." *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.,* 166 F.3d 65, 71-72 (2d Cir. 1999). "A *de minimis* defense does not apply where the *qualitative* value of the copying is material." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,* 307 F.3d 197, 208 (3d Cir.2002). Here, the Defendant copied and displayed a screengrab of a short video clip, in its entirety. The screengrab was prominently featured in the article, serving as a stationary depiction of the heart of the video clip. It was neither ephemeral nor fleeting, but a constant in the Defendant's article. Though it does constitute but a brief moment in the Plaintiff's short video clip, the qualitative value of the screengrab was significant. Indeed, the Defendant's article relies almost entirely on the content of the screengrab. The copied screengrab was neither small, nor lacking in qualitative value. Even more brazen, the infringement continues to be offered online on the Defendant's website.

In *Ringgold*, the Second Circuit held that the unauthorized use of a copyrighted poster in a television episode was not *de minimis* because all or part of poster was shown a total of nine times in a five-minute period, for a total of 26.75 seconds of playing time, and was thematically related to the content of the show. *Ringgold*, 126 F.3d 70, 72–73. To make such a determination, the Court considers, among other things, "the length of time the copyrighted work is observable" and its prominence. *Gottlieb Dev. LLC v. Paramount Pictures Corp.,* 590

F.Supp.2d 625, 632 (S.D.N.Y.2008) (Chin, J.) (explaining that in cases involving visual works, courts consider "the length of time the copyrighted work is observable as well as factors such as focus, lighting camera angles, and prominence.").  On the other hand, in *Sandoval v. New Line Cinema Corp.,* the defendant's use of plaintiff s copyrighted photographs in a motion picture was held to be *de minimis* because the photographs appeared in the film for a total of only 35.6 seconds, were primarily background, were not in focus, and often were difficult to see. 147 F.3d 215, 218 (2d Cir.1998) ("[The] photographs as used in the movie are not displayed with sufficient detail for the average lay observer to identify even the subject matter of the photographs, much less the style used in creating them.").  In this case, not only was the screengrab in focus, with optimal lighting and direct camera angles, very prominently displayed but it was a permanent fixture in the article, and is still available to the public.

To be sure, to determine substantial similarity, a court must decide "whether the average lay observer would recognize the challenged material as having been copied from the copyrighted work." *Crane v. Poetic Prods.,* 549 F.Supp.2d 566, 569 (S.D.N.Y.2008) (quoting *Flaherty v. Filardi,* 388 F.Supp.2d 274, 286 (S.D.N.Y.2005).  Critically, whether the quantitative threshold of substantial similarity is met in cases involving visual works, courts consider the extent to which the copyrighted work is copied in the allegedly infringing work. The observability of the copyrighted work is critical, and courts will consider the length of time the copyrighted work is observable as well as factors such as focus, lighting, camera angles, and prominence. *Sandoval,* 147 F.3d at 217; *Ringgold,* 126 F.3d at 75.  As previously recited, the screengrab was featured prominently, in its entirety, easily recognizable as the heart of the video clip.  It was in complete focus, well lit, with direct camera angles and prominently featured.   To an average lay person it was and continues to be readily observable as a copy of the original.

Significantly, many courts have looked at the issue of *de minimis* use as not ripe even at the summary judgment stage, much less on a motion to dismiss. *Mktg. Tech. Sols., Inc. v. Medizine LLC*, No. 09 CIV. 8122 (LMM), 2010 WL 2034404, at *3 (S.D.N.Y. May 18, 2010) ( "The qualitative value in the equation, on the present record, however, remains an issue of fact"). *eScholar, LLC v. Otis Educ. Sys., Inc.*, No. 04 CIV. 4051 (SCR), 2005 WL 2977569, at *28 (S.D.N.Y. Nov. 3, 2005) ("We do not find that it is undisputed any copying was *de minimis*. Nor do we find that the similarity concerns only noncopyrightable elements of eScholar's work, or that no reasonable trier of fact could determine that the works are substantially similar. These are the only circumstances where courts have required summary judgment at the substantial similarity stage.").   Furthermore, because the question of whether an infringement is substantially similar to the original work often raises a question of fact, summary judgment has been frowned upon in determining substantial similarity.   *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2d Cir. 1980).  *See SGC Commc'n Res., LLC v. Seminar Ctr., In*c., No. 98 CIV 2724 DC, 2001 WL 274053, at *5 (S.D.N.Y. Mar. 20, 2001) ("I cannot say, as a matter of law, however, that defendants' alleged copying of plaintiff's catalog is *de minimis* and that summary judgment should, therefore, be granted.").  The Defendants here brings a pre-answer, pre-discovery motion to dismiss on the issue of substantial similarity.  The Court should deny it as premature.  Even if the Court does consider whether the infringing work is substantially similar to the copyrighted work, the Court must consider the factors stated above and conclude that the copying is substantially similar, not *de minimis* and hence actionable.

## II.    COMPLAINT IS NOT BARRED BY FAIR USE

### A.  Courts Warn About Deciding On Fair Use On a Motion to Dismiss

Traditionally an affirmative defense, "there is a dearth of cases granting such a motion" at a motion to dismiss stage. *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015). Indeed, the fair-use defense is so fact-sensitive that the Second Circuit has instructed district courts to be "cautious" in granting *summary judgment* motions on this issue. *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991); *see also Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006) ("[T]he determination of fair use is an open-ended and context-sensitive inquiry"); *Playboy Enters. Int'l v. Mediatakeout.com LLC*, 2016 WL 1023321 (S.D.N.Y. Mar. 8, 2016); *M. Shanken Commc'ns, Inc. v. Cigar500.com*, No. 07 CIV. 7371 (JGK), 2008 WL 2696168, at *10 (S.D.N.Y. July 7, 2008) ("court should be cautious in finding fair use as a matter of law even on a motion for summary judgment"); *LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 442 (S.D.N.Y. 2011)("Due to the fact-driven nature of the fair use determination 'courts have found that fair use is usually unsuited to summary disposition'")(internal citations omitted); *accord Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, No. 15-CV-4244 (JGK), 2016 WL 4747281, at *10 (S.D.N.Y. Sept. 12, 2016), *reconsideration denied*, No. 15-CV-4244 (JGK), 2016 WL 6652733 (S.D.N.Y. Nov. 10, 2016). The consensus in this Circuit is clear that "[a]lthough affirmative defenses may be raised in a motion to dismiss, defenses such as the fair use doctrine involve a more detailed analysis of the facts at issue and are best resolved by summary judgment motions or adjudication at trial." *E. Gluck Corp. v. Rothenhaus*, 585 F. Supp. 2d 505, 514 (S.D.N.Y. 2008); *see also* e.g. *UMG Recordings, Inc. v. MP3.com, Inc.,* 92 F.Supp.2d 349 (S.D.N.Y.2000) (addressing fair use on a partial motion for summary judgment).

In the present case, however, the Defendant is asking the Court to consider a fair use defense before interposing an answer, before any discovery has taken place and when there is a

paucity of facts on the record.  The Defendant wrongly insists that fair use is evident on the face of the complaint.

Largely, the Defendant relies on cases stemming from *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687 (7th Cir.2012) (treating a motion to dismiss based on fair use as a motion for summary judgment and affirming because all the evidence needed to assess the defense had been provided).  *Brownmark* decision effectively converts a motion to dismiss into a summary judgment motion and relies on a much more developed record than what is available here.   In fact, the Court should consider a plethora of cases that decisively relegate fair use to later stages of the litigation.  *Browne v. McCain*, 612 F. Supp. 2d 1125, 1130 (C.D. Cal. 2009)("[I]n light of a court's narrow inquiry at this stage and limited access to all potentially relevant and material facts needed to undertake the analysis, courts rarely analyze fair use on a 12(b)(6) motion." See also *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 99 (D.D.C. 2015) (adjudicating that despite of *Brownmark* a fair use defense involves a fact-intensive inquiry).   *Vil v. Poteau*, No. 11-CV-11622-DJC, 2013 WL 3878741, at *4 (D. Mass. July 26, 2013)("The fact-sensitive nature of the fair use defense has caused courts to be reluctant to allow it as grounds for dismissal at this early juncture in the litigation"); *Sony BMG Music Entm't v. Tenenbaum,* 672 F. Supp. 2d 217, 220 (D. Mass. 2009)("fair use is more appropriately resolved on a factual record as most courts have done"); *BMG Music v. Gonzalez,* 430 F.3d 888 (7th Cir.2005) (fair use decided on appeal from summary judgment).

### B.       Fair Use Has to Be Evident From a Side-by-Side Analysis

Even in cases that have found a fair use defense is ripe for consideration at a motion to dismiss stage, some courts have recognized that only a parody can be evident on the face of the complaint without delving into a fact-specific inquiry.  *Katz v. Chevaldina*, 900 F. Supp. 2d

1314, 1316–17 (S.D. Fla. 2012) (relying on *Brownmark* to emphasize that a fair use defense in which the infringing work is parody is more likely to be ripe for resolution upon a motion to dismiss than other fair uses).   The present case does not feature a parody nor has Defendant claimed such a defense.   To the contrary, the Defendant insists that it is merely reporting the news.   Since news reporting and commentary is not one of the categories that lends itself easily to recognizing and evaluating fair use on the face of the complaint, the Court should deny this motion to dismiss as premature.

Even if the Court considers a pre-answer fair use defense in a non-parody case, the Defendant can only rely on evidence on the face of the complaint, by comparing the work side-by-side.   The Defendant bears the burden of proving that the use was fair.   That burden has not and cannot be met so early in the litigation process.   In considering the fair use factors the Court must not only weigh the totality of the evidence evident from a side-by-side comparison, but consider the potential significance and scope of evidence not yet part of the record.   In other words, when evaluating the four fair use factors the Court should consider whether any discovery, or even an answer would inform or aid in the fair use analysis.   Consequently, if evidence from a side-by-side comparison is insufficient or does not show that the use was fair then the motion is premature and should be denied.

### C.  Fair Use Defense Lacks Merit

If the Court does believe that the evidence based on a side-by-side comparison is sufficient to evaluate the fair use factors, the Defendant fares no better.   In 17 U.S.C. §107 Congress has provided four nonexclusive factors that inform whether a given use is fair:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

      1.    Character and Purpose of the Use

In the Second Circuit, the prevailing view is that the first factor is the most salient one and if the use is transformative, then a finding of fair use is likely.  In the wake of *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013) the Courts inquire as to whether "the new work merely 'supersede[s] the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'  *BWP Media* 87 F. Supp. 3d at 505.  Often called 'the heart of the inquiry of fair use', if the Defendant fails to establish transformative use, other factors become more relevant.

Crucially, the first factor analysis asks to what extent is the use transformative in that it does something more than repackage or republish the original copyrighted work.  *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014).  Courts have found that use of the original work, "in furtherance of the creation of a distinct visual aesthetic and overall mood" for the audience, is transformative. *TCA Television Corp. v. McCollum*, 151 F. Supp. 3d 419, 435 (S.D.N.Y. 2015).  Specifically, if "the secondary use adds value to the original—if [copyrightable expression in the original work] is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings—this is the very type of activity that the fair use doctrine intends to protect for the enrichment of society." *N. Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 614–15 (S.D.N.Y. 2015) (internal quotation

marks and citations omitted).   In that case, the Court did not find Fox News' use of a photograph depicting the events of 9/11 with alterations and commentary to be transformative enough.  *Id. at* 617. The Court noted that "even if an infringer's purpose was distinct from that of the plaintiff's, such purpose, by itself, does not necessarily create new aesthetics or a new work that alters the original work with new expression, meaning, or message" *Id.*   That decision also relied on *Monge v. Maya Magazines, Inc.,* 688 F.3d 1164, 1173, 1176 (9th Cir.2012) (concluding that a magazine's publication of copyrighted photographs as an exposé "sprinkled with written commentary" was "at best minimally transformative").  *N. Jersey Media* interprets the *Monge* decision to mean that a publication could not "simply take fair use refuge under the umbrella of news reporting."  *N. Jersey Media Grp. Inc.,* 74 F. Supp. 3d, at 617.  To be sure, neither news reporting nor commentary is a talisman of fair use.

　　If the use in the instant case is not transformative or is minimally so, the commercialism of Defendant's use becomes more relevant.  Yet the issue is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying a proper licensing fee.  *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 562, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) ("The fact that a publication was commercial as opposed to nonprofit is a separate factor that tends to weigh against a finding of fair use.").   The use by the Defendant is clearly commercial, because it is intended to attract viewers, readers and followers to its website, to increase web-traffic and social media footprint and subsequently earn revenue through advertising.   The Defendant cannot or does not challenge the fact that MIC is a for-profit company.   Therefore, if the Court agrees that the Defendant's use is minimally or not at all transformative, it should weigh evidence of commercialism more heavily against the finding of fair use.

a.  First Factor Does Not Favor a Finding of Transformative Use.

MIC concedes featuring the screegrab in its article.  As stated in the sections above, the infringing use merely reproduces the heart of the short video clip and prominently so. The article merely states that a video depicting a female protestor being punched by a male demonstrator was posted on WeAreChange YouTube channel.   The article features the entire video in the body of the article, properly imbedded from YouTube.   However, the leading, most prominent depiction of the conflict is the infringed screengrab that first appears on the webpage.   The article does not report nor comment on the making of the video or its author or the organization that hosts its YouTube channel, rather it addresses the content of the screengrab.   The original work, in this case, depicts the violent clashes and chaos of the protest including the male protester punching a female protestor.  It was created by a professional video journalist to document the protest.  The Defendant's contention that the video was amateur or unedited is patently untrue.  The video was simply taken amidst chaos and violence – in fact, it proved to be an exclusive clear depiction of the punching incident in question.

No new meaning, message or understanding, much less aesthetic is added to the original. MIC cannot take refuge under the umbrella of news reporting or commentary.  If MIC's argument was salient, then any news story, report or comment could be accompanied by a photograph without the slightest regard for the photographer's copyrights.  The professional photojournalist would be unable to license his or her works and the entire profession would lack the incentive to document and create works.   This *reductio ad absurdum* cannot be tolerable to the Court.   Professional photographers and photojournalists must be incentivized to observe, document and license their works to media outlets.  They must be able to earn a living doing so and the Fair Use Doctrine must be judiciously applied to facts where a simple licensing

14

agreement would have prevented an infringement. Taking into account that the Defendant is a sophisticated content consumer and creator, the Court should rule out that the use is transformative.

To summarize, the article's sparse comments regarding the source of origin of the video do not add a new understanding, new meaning or a message to the original work. MIC did not alter the screengrab in any way, but merely froze a frame of the protected work. This use of the screngrab is not transformative in accordance with Second Circuit precedent.

> b.   Defendant's Commercial Nature Favors the Plaintiff.

Given that Defendant does not and cannot show transformative use beyond the very minimal, the commercial nature of its enterprise becomes more relevant. Defendant is a for-profit company dependent on viewers, clicks, shares, likes, reposts and other modes of consumer approbation in the determination of its revenue.   The commercial nature of the Defendant mitigates heavily against the finding of fair use.

> 2. Second Factor is Neutral.

In analyzing the nature of the copyrighted work the Courts consider " '(1) whether the work is expressive or creative, ... with a greater leeway being allowed to a claim of fair use where the work is factual or informational, and (2) whether the work is published or unpublished, with the scope for fair use involving unpublished works being considerably narrower.' " *Cariou*, 714 F.3d 709–10 (quoting *Blanch,* 467 F.3d at 256)(quotation and citation omitted).  The Second factor is neutral to the finding of Fair Use.

> 3.   Third Factor Does Not Favor a Finding of Fair Use.

In examining the third factor courts consider "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3).  Furthermore, the

courts analyze "whether the quantity and value of the materials used[ ] are reasonable in relation to the purpose of the copying." *Blanch,* 467 F.3d at 257.

MIC uses a substantial portion of the work, in terms of quantitative and qualitative value. These factors were already discussed in Part I above, but bear repeating that MIC used the entire screengrab of a 4:18 minute video clip.   MIC presumptively relies on cases that permit a reasonable amount of copying to achieve transformative purpose as fair use.  Here, however, any amount of copying is superfluous because the Defendant already imbedded the entire video clip in the body of the article.   Hence, whatever transformative purpose it had a right to fulfill, would have sufficiently been fulfilled by the imbedded YouTube video of the entire clip.   The screengrab clearly exceeds whatever is necessary to convey the Defendant's alleged transformative message.  This is not to conceded, that a transformative message exists here, clearly it does not, but if the Court determines that it does, the imbedded YouTube video certainly conveys that message sufficiently.  The cases MIC cites on this point are equally unavailing.  While all cite numbers that involve a small percentage of the original work, most were decided on a summary judgment or later stages.

Here, the infringing use captures the heart of the video clip, the punching of the female protestor by the male protestor.  It is substantial in quantity and quality.

Finally, since the Defendant's use was minimally or not at all transformative, the qualitative analysis should reflect that.  MIC relies on transformative use to ground the substantial and profound amount of the work it copied and displayed.  It heavily depends on the notion that enough of the original must be reproduced to accomplish its transformative end.  But if the use is found lacking a transformative aspect or minimally so, then MIC's argument fails.

The fact remains that MIC took the most significant part of the video clip to illustrate its story and that it was unnecessary since the entire video clip was already imbedded in the body of its article.  Therefore, the third factor mitigates against a finding of fair use.

4.    Fourth Factor Does Not Favor a Finding of Fair Use.

The Second Circuit has elaborated that "[t]he focus here is on whether defendants are offering a market substitute for the original.... [O]ur concern is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work." *NXIVM Corp. v. Ross Inst.,* 364 F.3d 471, 481–82 (2d Cir.2004).  *See BWP Media USA, Inc.*, 87 F. Supp. 3d, at 509.

MIC's screengrab effectively usurped the original work.  It is not only conceivable, but likely that someone reading the infringing article (even today) would have no need to view the Plaintiff's video clip, nor would attempt to license it properly from the Plaintiff.  Not only would a person be satisfied by viewing the screengrab, but that is the very reason the Defendant distilled the precise moment of the violent act, so that the reader would not have to wade through the video clip.   The screengrab is the 'cliffs-notes' version of the video, specifically intended to usurp the original work.   Therefore, the fourth and final factor mitigates against a finding of fair use.   On balance three of the four factors favor the Plaintiff, among them the most important finding that the use was not transformative.     The Court should deny the Defendant's premature motion on fair use.

III.    **THE INFRINGED WORKS HAVE BEEN SUBSTANTIALLY IN COMPLIANCE WITH SECTION 411(A) OF THE COPYRIGHT ACT**

Unable to effectively challenge the substantive claim, the Defendant turns to a technical requirement of registration.  In a recent case in this District, the Court opined that if the plaintiff's "application is approved, all agree he can proceed with his claim. If his application is rejected, 17 U.S.C. § 411(a) unequivocally allows him to proceed as well. It is hard to see what public, private, or statutory interest is served or harmed by requiring him to wait, and re-file his action after his application is approved or denied, when he has already done everything he can to obtain that result." *Chevrestt v. Am. Media, Inc*., No. 16 CIV. 5557 (LLS), 2016 WL 4557318, at *2 (S.D.N.Y. Aug. 31, 2016).  The Court in *Chevrestt* looked to 2 Nimmer on Copyright § 7.16[B][3][b][ii], at 7-170.2 to 7-171:

> Given that the claimant who has submitted an application that has yet to be acted upon at that juncture has done all that she can do, and will ultimately be allowed to proceed regardless of how the Copyright Office treats her application, it makes little sense to create a period of "legal limbo" in which suit is barred.  Similarly here, whatever applications are still pending – the Plaintiffs will be able to sue for infringement regardless of the result of these applications.

In the Second Circuit, several District Courts have held that a pending registration is sufficient for the purposes of filing a copyright infringement claim.   It is considered a jurisdictional prerequisite, not a substantive element of the claim -- as the Defendant misclassifies it in its motion to dismiss.  See *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp*., 210 F. Supp. 2d 147, 157 (E.D.N.Y. 2002), *aff'd sub nom. Well-Made Toy Mfg. Corp v. Goffa Int'l Corp.*, 354 F.3d 112 (2d Cir. 2003) ("Actual certification by the Copyright Office is not necessary. A copyright holder may commence an action for infringement as soon as the Copyright Office has received a proper application, fee and deposit.")   "In order to bring suit for copyright infringement, it is not

18

necessary to prove possession of a registration certificate. One need only prove payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of a registration application." *Haven v. Time Warner, Inc*., 896 F. Supp. 141, 143 (S.D.N.Y. Aug. 17, 1995).

In *Oban US, LLC v. Nautilus, Inc.*, 2014 WL 2854539 (D. Conn. Jun. 23, 2014), the Court also acknowledged that the registration requirement is a formality that is satisfied by a pending application. The application approach, according the *Oban*, recognizes that while 17 U.S.C. § 411(a) makes registration a prerequisite to suit, 17 U.S.C. § 410(d) provides that the "effective date of a copyright registration is the day on which an application, deposit, and fee … have all been received by the Copyright Office." *Id*. at *6. The Court in *Oban* further reasoned that if a "court of competent jurisdiction can adjudicate the adequacy of the submission to the Copyright Office," then the submission of an application is sufficient to bring suit. *Id. See* 2 Nimmer on Copyright § 7.16[B][3] [b].

Even more convincingly, "[a]s the leading treatise on copyright explains, the registration approach thus creates a strange scheme: '[G]iven that the claimant ... will ultimately be allowed to proceed regardless of how the Copyright Office treats the application, it makes little sense to create a period of 'legal limbo' in which suit is barred." *Oban*, at *6 quoting 2 Nimmer on Copyright § 7.16[B][1][a][i] (internal citations omitted). Instead, the Court in Oban opts for "[t]he application approach avoids this legal limbo—and avoids prolonging the period of infringement—by allowing a litigant to proceed with an infringement suit as soon as he has taken all of the necessary steps to register the copyright at issue." *Oban,* at *7.(internal punctuation omitted). *Oban* concludes that courts that adopt "the application approach best effectuate the interests of justice and promote judicial economy." *Id*. Even some courts following the

19

registration approach, *Oban* admonishes, "have noted that it "leads to an inefficient and peculiar result." *Id.* (internal quotation marks omitted).

The Second Circuit had ample opportunity to resolve the District Court split on the question of registration vs. application approaches and chose to punt both times. "[O]ur Court has not yet determined, however, whether a merely pending application for registration satisfies the Act's requirement that a work be registered before a related infringement suit is filed." *A Star Group, Inc. v. Manitoba Hydro*, 621 Fed. Appx. 681(2d Cir. July 27, 2015). Similarly, in *Psihoyos v. John Wiley & Sons, Inc.*, the Second Circuit acknowledged that the Courts of Appeal were divided as to whether a pending application satisfied Section 411(a)'s requirement of copyright registration as a prerequisite for litigation. Nonetheless, the Court determined that "[w]e need not resolve the dispute or otherwise embroil ourselves in this circuit split..." 748 F.3d 120 (2d Cir. 2014).

Even the Supreme Court of the United States chose to abstain from ruling on this issue in *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 171 (2010) ("We ... decline to address whether § 411(a)'s registration requirement is a mandatory precondition to suit that ... district courts may or should enforce *sua sponte* by dismissing copyright infringement claims involving unregistered works.").

A split within and without the circuit on the approach better tailored to the statutory language, Congressional intent and notions of judicial expediency and fairness should be resolved in the favor of the application approach.

In this case, the U.S. Copyright Office has received payment, application and deposit copy of the underlying original work and has issued a pending registration number. See Compl. . ¶ 10 & Ex. B. The Plaintiff has done everything that he was charged with by the Copyright Office in

20

order to secure a registration prior to the filing of the suit.  The Court should consider it substantially sufficient to meet the requirement of 411(a) and deny the motion.

## IV.    PLAINTIFF HAS SUFFICIENTLY PLED THE CLAIM AT THIS EARLY STAGE

In order to properly plead a claim for copyright infringement, pursuant to 17 U.S.C. §§106 and 501, the Plaintiff "must allege 1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." *Young-Wolff*, 2014 WL 349711 at *2.  These four elements, as enumerated by the Hon. Judge Wood, have been properly pled by Plaintiff.    Specifically, Plaintiff's Complaint pleads that 1) screengrab, taken from a video, is the original work of Plaintiff and now the subject of the copyright claim. See Complaint ¶¶ 7, 9; 2) Plaintiff owns the copyright in the video.  See Complaint ¶9; 3) this copyrights has been duly and timely registered with the Copyright Office.  See Complaint ¶10 & Ex. B; and 4) the Defendant published an article on and around April 16, 2017 that featured the screengrab.  See Complaint ¶11 & Exhibit C.  Having properly pled all four required elements, the Complaint is legally sufficient and should survive the motion to dismiss.

In its motion papers, the Defendant tries to argue, rather unsuccessfully, that a claim for enhanced damaged based on willfulness cannot be made and should be dismissed at this early stage.  To be sure, a properly pled complaint must include some allegation that goes beyond bare recitations.  However, the Plaintiff's pleadings do not have to be detailed and factually specific as to the discoverable facts pertaining to willfulness beyond a "plain and short statement".

21

"The contention that [Plaintiff] has not established willfulness is irrelevant at this point since willfulness may be demonstrated any time before trial and thus cannot be an element of a copyright infringement claim. 17 U.S.C.A. § 504(c) ("copyright owner may elect, at any time before final judgment is rendered ... an award of statutory damages" which the district court may enhance in its discretion to $150,000 per infringed work upon a finding that the infringement was committed willfully.")" *Blagman v. Apple Inc.*, No 12-cv-5453 (ALC) (JCF), 2013 WL 2181709, at *4 (S.D.N.Y. May 20, 2013). *See also Fitzgerald Pub–Co., Inc. v. Baylor Pub. Co., Inc.,* 807 F.2d 1110, 1113 (2d Cir.1986) ("Under § 501(a) intent or knowledge is not an element of infringement ... Innocence is only significant to a trial court when it fixes statutory damages, which is a remedy equitable in nature."); *Loussier v. Universal Music Group, Inc.,* 214 F.R.D. 174, 178 (S.D.N.Y.2003); *Coleman v. ESPN, Inc.,* 764 F.Supp. 290, 294 (S.D.N.Y.1991). While Defendant cites to cases either outside of this Circuit or inapposite, the law in this Circuit is clear the Plaintiff need not plead willfulness this early on. One of the two cases Defendant cites that supports the onerous burden to plead willful infringement in the complaint is easily distinguished. In *Amini Innovation Corp. v. KTY Intern. Marketing,* 768 F.Supp.2d 1049 (C.D.Cal.2011), the Court determined damages for a default judgment where the defendant failed to appear and the plaintiff failed to provide any basis in his complaint that statutory damages for willfulness were warranted. That is clearly distinguishable from the present case, where an answer and discovery will fully develop the record.

To sum up, the Complaint adequately sets forth factual allegations and discovery will show whether willfulness could be proven. The premature motion should be denied.

## **CONCLUSION**

In light of the reasons stated above, we respectfully ask that Defendant's Motion to Dismiss be denied.

Dated: June 29, 2017                        Respectfully Submitted,
       Valley Stream, NY

                                              */s/Yekaterina Tsyvkin*
                                              Yekaterina Tsyvkin
                                                Richard P. Liebowitz

                                              Liebowitz Law Firm PLLC
                                              11 Sunrise Plaza, Suite 305
                                              Valley Stream, NY  11580
                                              Tel: (516) 233-1660
                                              Fax: (516) 612-2740
                                              kt@liebowitzlawfirm.com
                                              rl@liebowitzlawfirm.com

                                              *Counsel for Plaintiff Lukasz Rudkowski*