**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUKASZ RUDKOWSKI,<br><br>Plaintiff,<br><br>- against -<br><br>MIC NETWORK, INC.<br><br>Defendant. | Docket No. 17-cv-3647 (DAB-JCF)<br><br>ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OR REARGUMENT PURSUANT TO LOCAL RULE 6.3 AND RULE 60(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**TABLE OF CONTENTS**


TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

BACKGROUND ........ 3

LEGAL STANDARD ........ 5

ARGUMENT ........ 6

POINT I: THE COURT HAS OVERLOOKED CIRCUIT COURT AUTHORITY WHICH HOLDS THAT WITH RESPECT TO VISUAL WORKS, THE QUALITATIVE NATURE OF DEFENDANT'S SECONDARY USE AND QUANTITATIVE OBSERVABILITY ARE CONTROLLING ........ 6

A. The Court Has Overlooked That With Respect to Visual Works, the Qualitative Value of the Copying, if Material, Forecloses the Defense ........ 6

B. The Court Has Overlooked That With Respect to Visual Works, The Quantitative Component Depends on the Observability of Plaintiff's Work ........ 8

C. The Court's Reliance on A Mathematical Ratio Alone to Establish the *De Minimis* Defense is Unprecedented and Should Be Reconsidered ........ 10

POINT II: THE COURT HAS OVERLOOKED THAT THE *KANONGATAA* DECISION WAS BASED ON THE FAIR USE DEFENSE UNDER 17 U.S.C. § 107; NOT ON A STANDALONE *DE MINIMIS* DEFENSE ........ 10

POINT III: THE COURT HAS OVERLOOKED THAT ITS RULING WILL FORCE COPYRIGHT HOLDERS OF MOTION PICTURES AND VIDEOS TO INDEPENDENTLY REGISTER EVERY SINGLE FRAME OF EACH WORK TO PROTECT AGAINST COPYRIGHT INFRINGEMENT ........ 12

POINT IV: THE COURT OVERLOOKED THAT STATUTORY DAMAGES MAY BE AWARDED WHERE THE REGISTRATION IS OBTAINED WITHIN THREE MONTHS OF THE INITIAL DATE OF PUBLICATION (EVEN WHERE THE EFFECTIVE DATE OF REGISTRATION IS SUBSEQUENT TO THE INFRINGEMENT DATE) ........ 13

CONCLUSION ........ 14

# TABLE OF AUTHORITIES

## CASES

*Campbell v. Acuff Rose Music, Inc.*,
510 U.S. 569, 577, 114 S.Ct. 1164, 1170-71 (1994) .......... 11

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
307 F.3d 197, 208 (3d Cir.2002).......... 7

*Durham Indus., Inc. v. Tomy Corp.*,
630 F.2d 905, 911 (2d Cir. 1980).......... 8

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517, 524 (1994).......... 12

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
590 F. Supp. 2d 625, 631 (S.D.N.Y. 2008).......... 6, 8

*Hirsch v. CBS Broadcasting Inc.*,
17-cv-1860 (PAE), 2017 WL 3393845, at *3 (S.D.N.Y. August 4, 2017).......... passim

*International Controls Corp, v. Vesco,*
556 F.2d 665, 670 (2d Cir. 1977).......... 5

*Kanongataa v. Coed Media Group, LLC*,
No. 16-cv-07472 (LAK) (S.D.N.Y. Feb. 15, 2017).......... 10

*Kingvision Pay-Per-View Ltd. v. Lake Alice Bar,*
168 F.3d 347, 350 (9th Cir. 1999) .......... 5

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
71 F.3d 996, 1002 (2d Cir. 1995).......... 7

*Lugo v. Artus*, No.
05-cv-1998 (SAS), 2008 WL 312298, at *2 (S.D.N.Y. Jan. 31, 2008) .......... 5

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*,
166 F.3d 65, 71 (2d Cir. 1999).......... 7

*Ringgold v. Black Entm't Television, Inc.*,
126 F.3d 71, 75 (2d Cir. 1997).......... passim

*Rumsey v. New York State Dep't of Corr. Servs.,*
580 F.Supp. 1052 (N.D.N.Y.1984) .......... 5

***CASES (continued…)***

*Sandoval v. New Line Cinema Corp.*,
147 F.3d 215, 217 (2d Cir.1998)........................................................................................ 8

*Sanofi-Synthelabo v. Apotex, Inc.*,
363 F. Supp. 2d 592, 594 (S.D.N.Y. 2005)........................................................................ 5

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255, 257 (2d Cir. 1995).......................................................................................... 5

*TufAmerica, Inc. v. WB Music Corp.*,
67 F. Supp. 3d 590, 595 (S.D.N.Y.2014).......................................................................... 10

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*,
155 F. Supp. 2d 1, 46 (S.D.N.Y. 2001), *remanded on other grounds*, 277 F.3d 253 (2d Cir. 2002) ..................................................................................................................... 9

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*,
No. 98 CIV. 7128 (BSJ), No. 98 CIV. 7129 (BSJ), No. 98 CIV. 7130 (BSJ), 2001 WL 1518264, at *7 (S.D.N.Y. Nov. 28, 2001) ...................................................................... 10

**STATUTES**

17 U.S.C. § 107................................................................................................................ passim
17 U.S.C. § 412...................................................................................................................... 13
17 U.S.C. § 504(c) .................................................................................................................. 3

**RULES**

Fed. R. Civ. P. 60(b)(1)..................................................................................................... passim
Local Civil Rule 6.3 ........................................................................................................... 1, 5

## INTRODUCTION

Pursuant to Local Civil Rule 6.3 and Rule 60(b)(1) of the Federal Rules of Civil Procedure, Plaintiff Lukasz Rudkowski ("Plaintiff" or "Rudowski"), via counsel, hereby submits this memorandum of law in support of Plaintiff's Motion for Reconsideration or Reargument of the District Court's Order, dated March 23, 2018, which granted Defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [ECF Docket ("Dkt.") # 21, Order]

Even though the Court found that Defendant's unauthorized use of a screenshot (the "Photograph") from Plaintiff's Video was qualitatively similar to Plaintiff's work, and readily observable for infinite duration, the Court nonetheless dismissed Plaintiff's complaint on sole grounds that the mathematical ratio between the temporal length of the Photograph (1/53rd of one second) vs. the temporal length of the Video in its entirety (258 seconds) was "trivial." The Court's decision establishes a novel precedent which can lead to abusive practices by copyright infringers.

For example, under the Court's ruling, a copyright pirate can visit his local cineplex and take 500 distinct screenshots of a blockbuster movie such as *Black Panther,* which has a runtime of 135 minutes. According to Defendant, the length of a single frame screenshot is 1/53rd of a second. [See Dkt. #11, p. 5, fn 2] Thus, because the length of the *Black Panther* motion picture is 8100 seconds, it consists of 429,300 potential screenshots. If the copyright pirate takes only 500 screenshots of all the lead characters and climatic scenes, it would only yield 0.00000233 percent of the total duration of the *Black Panther* movie. Under the Court's present ruling, the copyright pirate would be free to commercially exploit those 500 screenshots on websites, in posters or coffee table books without authorization from the copyright holder. If Marvel Studios,

the film's producer, then filed suit against the pirate, the defendant would have a complete defense to infringement on grounds that under *Rudowski v. Mic Network*, his use was "trivial." Because the length of the 500 screenshots is only a tiny fraction of the movie's overall duration, such use would be considered *de miminis*, notwithstanding the fact that the screenshots captured the lead characters and central narrative of the film.

The *Black Panther* example clearly illustrates why the Court's order should be vacated. The *de minimis* defense cannot rest on cold mathematical ratios alone. In the case of visual works, the qualitative nature of the defendant's use and observability of such use must necessarily outweigh any raw mathematical ratio between the length of a screenshot and length of the work as a whole. Indeed, at least one Third Circuit court has found that in considering a *de minimis* defense, the qualitative nature of the use, if material, is controlling. In the Second Circuit, no court has ever determined (before this Court's ruling) that a raw mathematical ratio alone is sufficient to establish the *de minimis* defense, particularly where the secondary use is qualitatively similar to the original work and readily observable in the foreground.

The Copyright Act serves to protect *qualitative* works of art to encourage their creation, not to reduce them to mathematic statistics. Under the Court's present ruling, every copyright holder of every motion picture or video would necessarily have to register copyrights for every individual frame of their audio-visual works to ensure that their works are adequately protected. This would impose a severe economic and administrative burden on both copyright holders and the U.S. Copyright Office. The producers of *Black Panther*, for example, would have to file 429,300 copyright registrations to ensure that screenshots of its movie could not be expropriated. Plaintiff here would need to register 258 registrations (given that the length of the video is 4 minutes and 18 seconds). This is an untenable result.

In sum, the Court's Order should be vacated on grounds that: (1) the Court has overlooked Circuit court authority which holds that the qualitative nature of Defendant's use, if material, forecloses the *de minimis* defense as a matter of law; (2) the Court has overlooked that Judge Kaplan's decision in *Kanongataa* was based on the Fair Use defense under 17 U.S.C. § 107; not a standalone *de minimis* defense; (3) the Court has overlooked that its ruling will force copyright holders of motion pictures and videos to independently register every single frame of each work to protect against copyright infringement, causing severe economic and administrative burden on copyright holders and the Copyright Office; and (4) the Court has overlooked that statutory damages may be awarded under 17 U.S.C. § 504(c) where the work is registered within three months of the date of initial publication (even if the infringement took place prior to the effective date of registration). Accordingly, the order should be vacated under Rule 60(b)(1) and the case should be restored to calendar so the parties can proceed with discovery.

## BACKGROUND

### Factual Background

Plaintiff Rudkowski is a professional video journalist who is the founder of We are Change, an independent media organization dedicated to documenting and exposing corruption. [Compl. ¶ 5] On April 15, 2017, Rudkowski was covering an event in his professional capacity in Berkley, California. The event was billed as a pro-free speech protest, and officials also expected a significant counter- protest by a group that opposed hate-speech. The two opposing groups of protesters clashed violently. The event garnered significant national attention. During the event, a prominent and controversial figure, Nathan Damigo punched a female protestor. Plaintiff used his skills and talent as a videographer to clearly record the woman protestor getting punched. [Compl. ¶ 7]. He had unique access, angle and opportunity to capture the moment.

On that same day, Plaintiff published a 4:18 minute video clip of the violent protest on his organization's YouTube channel. (the "Video") [Compl. ¶ 8 & Ex. A] Rudowski then promptly and timely registered the video with U.S. Copyright Office. [Compl. ¶ 10 & Ex. B].

Defendant operates the website www.mic.com (the "Website") [Compl. ¶ 6]. On April 16, 2017, Defendant published its own article about the clashes at the protest entitled *Berkeley riots: Video appears to show white supremacist Nathan Damigo punching protestor*, Mic (Apr. 16, 2017) (*see* https://mic.com/articles/174306/berkeley-riots-video-appears-toshow-white-supremacist-nathan-damigo-punchingprotester#.szclRqM5H.) A screengrab from Plaintiff's Video (the "Photograph") was prominently featured in Defendant's article. Defendant expropriated the heart of the Video, as the Photograph depicted the precise moment that Nathan Damigo punched the female protestor. [Compl. ¶ 11 & Ex. C] Defendant did not have Plaintiff's permission or consent to publish any part of the Video and did not seek to obtain a license from Plaintiff. [Compl. ¶ 12.]

**Procedural Background**

On May 5, 2017, Plaintiff filed his complaint for copyright infringement. [Dkt. #1]

On June 15, 2017, Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) based on arguments that Defendant's secondary use constituted (1) *de minimis* non-actionable copying; and (2) fair use under section 107 of the Copyright Act. [Dkt. # 11]

On June 29, 2017, Plaintiff filed his opposition to the motion. [Dkt. #13]

On March 23, 2018, the Court entered a decision and order dismissing the complaint in its entirety based solely on grounds that Defendant's secondary use constituted *de minimis* non-actionable copying. [Dkt. # 21]

**LEGAL STANDARD**

A party seeking reconsideration or reargument pursuant to Local Civil Rule 6.3 must demonstrate that the Court overlooked controlling decisions or factual matters "that might materially have influenced its earlier decision." *See Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) (to prevail on a motion for reconsideration, the movant must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). In the alternative, the movant must "demonstrate the need to correct a clear error or prevent manifest injustice." *Sanofi-Synthelabo v. Apotex, Inc.,* 363 F. Supp. 2d 592, 594 (S.D.N.Y.2005).

Rule 60(b)(1) of the Federal Rules of Civil Procedure provides in relevant part that "the court may relieve a party . . . from a[n] . . . order . . . for the following reasons: (1) mistake . . ." Fed. R. Civ. P. 60(b)(1). "Rule 60(b)(1) motions premised upon 'mistake' are intended to provide relief to a party when the judge has made a substantive mistake of law or fact in the final judgment or order." *Lugo v. Artus*, No. 05-cv-1998 (SAS), 2008 WL 312298, at *2 (S.D.N.Y. Jan. 31, 2008) (citation and internal quotations omitted). "Thus, Rule 60(b)(1) motions can be used by a trial court to correct judicial errors." *Id., citing International Controls Corp, v. Vesco,* 556 F.2d 665, 670 (2d Cir.1977) (stating that district court's mistake of "substantive legal nature" may be corrected under Rule 60(b)(1)); *see also Kingvision Pay-Per-View Ltd. v. Lake Alice Bar,* 168 F.3d 347, 350 (9th Cir.1999) ("[T]he words 'mistake' and 'inadvertence' . . . may include mistake and inadvertence by the judge.")

Relief under 60(b)(1) is also appropriate where a court may have overlooked certain parties' arguments or evidence in the record. *See, e.g., Rumsey v. New York State Dep't of Corr. Servs.,* 580 F.Supp. 1052 (N.D.N.Y.1984) (granting 60(b)(1) motion where court may

have overlooked triable issues of fact). As more fully detailed below, Plaintiff's motion for reconsideration or reargument pursuant to Local Civil Rule 6.3 and Rule 60(b)(1) satisfies the applicable standards.

## ARGUMENT

### POINT I: THE COURT HAS OVERLOOKED CIRCUIT COURT AUTHORITY WHICH HOLDS THAT WITH RESPECT TO VISUAL WORKS, THE QUALITATIVE NATURE OF DEFENDANT'S SECONDARY USE AND QUANTITATIVE OBSERVABILITY ARE CONTROLLING

"To determine substantial similarity, a court must decide whether the average lay observer would recognize the challenged material as having been copied from the copyrighted work." *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 631 (S.D.N.Y. 2008). "Substantial similarity exists between the defendant's work and the protected aspects of the plaintiff's work when the copying at issue 'is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred.'" *Hirsch v. CBS Broadcasting Inc.*, 17-cv-1860 (PAE), 2017 WL 3393845, at *3 (S.D.N.Y. August 4, 2017) (quoting *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 71, 75 (2d Cir. 1997)).

In sum, courts have recognized three elements of a *de minimis* defense: (1) the qualitative nature of the use; (2) the quantitative nature of the use in terms of observability; and (3) the quantitative nature of the use in terms of the mathematical ratio between the amount used vs. the length of the original work. Here, the Court has improperly determined, as a matter of law, that the third element alone is sufficient to establish the defense, even after finding that the qualitative element and quantitative observability favor the Plaintiff.

#### A. THE COURT HAS OVERLOOKED THAT WITH RESPECT TO VISUAL WORKS, THE QUALITATIVE VALUE OF THE COPYING, IF MATERIAL, FORECLOSES THE DEFENSE

"The qualitative component concerns the copying of expression," *Hirsch,* 2017 WL 3393845, at *3, and asks whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (quotation omitted); *see also Ringgold*, 126 F.3d at 77 (applying "average lay observer" test when evaluating qualitative component).

Here, the Court determined as a matter of law that the qualitative component of the inquiry was satisfied because the Photograph displayed on Defendant's Website was an exact copy of a segment of the Video. [Order, Dkt. #21 p. 9] Indeed, Defendant expropriated the very heart and core narrative of the Video by displaying the White supremacist punching the female protester. Yet, the Court dismissed the complaint regardless. This is a mistake-of-law. The Court has overlooked Circuit court authority, cited in Plaintiff's opposition brief [Dkt. #13, p. 12 of 29], which holds that the qualitative value of Defendant's copying, if material, forecloses the *de minimis* defense. After all, Copyright law is a qualitative body of law which serves to protect works of art; it cannot be reduced to cold mathematical ratios.

The Second Circuit has held that "the quantitative analysis of two works **must always** occur in the shadow of their qualitative nature." *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 71 (2d Cir. 1999) (boldface added). Similarly, the Third Circuit has held that "[a] *de minimis* defense **does not apply** where the qualitative value of the copying is material." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,* 307 F.3d 197, 208 (3d Cir.2002) (boldface added).

Here, there can be no question that Defendant's qualitative copying was material as it expropriated the core narrative of the Video to publish its story of a White supremacist assaulting a female protester. As such, the *de minimis* defense fails as a matter of law under the Circuit

authorities of *Nihon* and *Dun & Bradstreet* (which were overlooked by the Court in its decision).

In the alternative, the Court's conclusion concerning Defendant's qualitative copying should at the very least raise a question of material fact for the jury to decide. See, e.g., *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 911 (2d Cir. 1980) ("[T]he question of infringement is generally resolved by the fact-finder's prediction of the probable reaction of a hypothetical 'ordinary observer.' "); *Hirsch,* 2017 WL 3393845, at *4 ("[b]ecause substantial similarity typically presents an extremely close question of fact ... questions of non-infringement have traditionally been reserved for the trier of fact.") (internal quotation and citation omitted).

## B. THE COURT HAS OVERLOOKED THAT WITH RESPECT TO VISUAL WORKS, THE QUANTITATIVE COMPONENT DEPENDS ON THE OBSERVABILITY OF PLAINTIFF'S WORK

While the Court did address the observability factor in its decision, the Court overlooked that observability in a quantitative sense is a *legal element* of the defense; not just a factual predicate.

When analyzing non-visual works such as music, the quantitative component "generally concerns the amount of the copyrighted work that is copied." *Ringgold*, 126 F.3d at 75. However, the analysis shifts in cases involving videos or photographs. "In cases involving visual works, determining whether the 'quantitative threshold' of substantial similarity has been crossed, supporting liability for copyright infringement, depends on the 'observability of the copyrighted work in the allegedly infringing work.'" *Hirsch,* 2017 WL 3393845, at *4 (quoting *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir.1998)). "Observability, in turn, depends on 'the length of time the copied work is observable in the allegedly infringing work and such factors as focus, lighting, camera angles, and prominence.' *Id.* (quoting *Ringgold*, 126 F.3d at 75; see also *Gottlieb Dev. LLC*, 590 F. Supp. 2d at 632 (same)).

In its decision, the Court did not apply the legal standard of observability established by the Second Circuit in *Sandoval* and *Ringgold*. Instead, it sought to distinguish the facts of these Second Circuit cases from the facts presented here by drawing a distinction between videos and photographs (both of which are visual works).[1] But the object of the analysis is to apply *the* Second Circuit's legal standard to the facts of this case. The Court must ask the question: what length of time is the Photograph observable in Defendant's article? Is it prominently featured? Is it permanently displayed such that an ordinary observer can clearly see it in focus. If the answer is in the affirmative, then the observability factor strongly disfavors the *de minimis* defense. Here, the Court has not asked these questions, which is a mistake-of-law. The Court is required to apply the Second Circuit's legal standard for analyzing the defense. *Accord Hirsch,* 2017 WL 3393845, at *5 ("The observability factors of focus, lighting, camera angles, and prominence all disfavor a finding of *de minimis* infringement. The Episode displays a substantial proportion of the Photo in clear focus, and the Photo occupies much, although not all, of the screen. To be sure, a finder of fact must also consider the length of time the copied work is observable in the allegedly infringing work . . ."); *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 155 F. Supp. 2d 1, 46 (S.D.N.Y. 2001), *remanded on other grounds*, 277 F.3d 253 (2d Cir. 2002) (finding likelihood that prominent display of several copyrighted clips, which each lasted less than three seconds, was not *de minimis*).

Accordingly, a reasonable jury could find that Defendant's use of the Photograph meets the test of substantial quantitative similarity and, therefore, is not *de minimis* as a matter of law.

---

[1] *See* Decision, Dkt. #21, p. 10 ("Unlike cases where defendants' works are films that show a copyrighted work for a period of seconds on screen, Defendant's allegedly infringing work is a still photograph, rather than a video. Thus, Plaintiff cannot use this line of cases to argue that the Photograph is a permanent fixture on the Website and that, therefore, Defendant's use is not *de minimis.*")

### C. THE COURT'S RELIANCE ON A MATHEMATICAL RATIO ALONE TO ESTABLISH THE *DE MINIMIS* DEFENSE IS UNPRECEDENTED AND SHOULD BE RECONSIDERED

The Court's decision states:

> In a qualitative sense, Defendant's Photograph is an exact screenshot of Plaintiff's Video. However, in a quantitative sense, Defendant's use of Plaintiff's Video is trivial. An individual frame clearly represents an extremely small fragment of the whole Video.

*See* Decision and Order, Dkt. #21 p. 9. The Court then relies on two decisions: *TufAmerica, Inc. v. WB Music Corp.*, 67 F. Supp. 3d 590, 595 (S.D.N.Y.2014) and *Video-Cinema Films, Inc. v. Cable News Network, Inc.*, No. 98 CIV. 7128 (BSJ), No. 98 CIV. 7129 (BSJ), No. 98 CIV. 7130 (BSJ), 2001 WL 1518264, at *7 (S.D.N.Y. Nov. 28, 2001).

*TufAmerica* does not involve any visual works; it is a music case. Moreover, *Video-Cinema Films, Inc.* is a fair use case, not a standalone *de minimis* case. Accordingly, the legal standards are completely inapposite. Neither Defendant nor the Court has cited any visual work case (whether photograph or video) in which a court held that as a matter of law, the mathematical ratio alone between the length of a Photograph (or screenshot) versus the length of the original Video was sufficient to establish a *de minimis* defense. The court's decision in this matter is simply unprecedented and not supported by existing caselaw. Given that the qualitative nature of Defendant's copying, coupled with the undisputed observability of the work favors Plaintiff, the Court should grant this present motion to vacate the order so as to allow a jury to decide the question.

## POINT II: THE COURT HAS OVERLOOKED THAT THE *KANONGATAA* DECISION WAS BASED ON THE FAIR USE DEFENSE UNDER 17 U.S.C. § 107; NOT ON A STANDALONE *DE MINIMIS* DEFENSE

In *Kanongataa v. Coed Media Group, LLC*, No. 16-cv-07472 (LAK) (S.D.N.Y. Feb. 15, 2017), the Court "granted defendants' motions to dismiss from the bench on the ground that the

uses complained of were fair uses." Judge Kaplan stated: "This was in each case a use squarely within the preambulatory portion of Section 107 of the Copyright Act, namely, criticism, comment, news reporting, which goes a significant part of the distance toward a conclusion of fair use." *Id.* at *1. In evaluating the third fair use factor under 17 U.S.C. § 107(3), Judge Kaplan further determined that the "the amount and substantiality of the portions used in relation to the copyrighted work as a whole are very small in each case and, in the case of COED Media, trivial and *de minimis* for sure." *Id.*

It is evident on the face of the *Kanongataa* decision that Judge Kaplan dismissed the complaint based on the fair use defense, and was analyzing the *de minimis* nature of the use under the statutory framework provided by section 107, rather than based on a standalone *de minimis* defense. This distinction is critical because section 107 requires courts to weigh all four factors before making a fair use determination. *See Campbell v. Acuff Rose Music, Inc.*, 510 U.S. 569, 577, 114 S.Ct. 1164, 1170-71 (1994) ("Nor may the four statutory factors be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright.").

Indeed, Judge Engelmayer recognized this key distinction in *Hirsch v. CBS Broadcasting Inc.*, a case which was cited in this Court's decision:

> The *de minimis* nature of an act of infringement can support dismissal on **two other theories**, neither germane here. A *de minimis* violation can occur when there is "a technical violation of a right so trivial that the law will not impose legal consequences"; this implicates violations so trivial that they are "rarely litigated." **The *de minimis* nature of a violation also comes into play when a defendant claims fair use of a copyright and argues that the copyrighted "portion used was minimal and the use was so brief and indistinct as to tip the third fair use factor decisively against the plaintiff."** *Ringgold*, 126 F.3d at 74-75.
>
> 2017 WL 3393845 at fn. 2 (boldface added)

Here, in relying on Judge Kaplan's decision in *Kanongataa*, the Court has conflated two legal standards: fair use on the one hand, which considers the *de minimis* nature of the secondary use under section 107(3) of the Copyright Act, and substantial similarity on the other hand, a judicial doctrine which considers whether the secondary use is non-actionable copying. In other words, by relying on *Kanongataa*, the Court dismissed Plaintiff's complaint based on the third fair use factor standing in isolation. In its decision, the Court states:

> *Kanongataa v. Coed Media Group*, LLC, 16 Civ. 7472 (LAK), involves nearly an identical fact pattern as here . . . In an oral arguments involving motions to dismiss in that case and related cases, Judge Kaplan held that the use of the screenshot constituted *de minimis* use . . The Court here adopts Judge Kaplan's reasoning and holds that Defendant's Photograph constitutes *de minimis* use.

Decision and Order, p. 10-11. But Judge Kaplan's reasoning was based on weighing all four factors under the statutory framework prescribed by section 107. Here, in contrast, the Court did not analyze the fair use defense at all, and has thus conflated two separate legal standards.

**POINT III: THE COURT HAS OVERLOOKED THAT ITS RULING WILL FORCE COPYRIGHT HOLDERS OF MOTION PICTURES AND VIDEOS TO INDEPENDENTLY REGISTER EVERY SINGLE FRAME OF EACH WORK TO PROTECT AGAINST COPYRIGHT INFRINGEMENT**

The Copyright Act serves to protect *qualitative* works of art to encourage their creation, not to reduce them to mathematic statistics. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 524 (1994) (stating that the purpose of the Copyright Act is "to encourage the production of original literary, artistic, and musical expression for the good of the public."). Under the Court's present ruling, every copyright holder of every motion picture or video would necessarily have to register copyrights for every individual frame of their audio-visual works to ensure that their works are adequately protected. This would impose a severe economic and administrative

burden on both copyright holders and the U.S. Copyright Office.

According to Defendant, a screenshot taken from a video or motion picture represents only 1/53rd of a second. The producers of the blockbuster motion picture *Black Panther*, for example, would have to file 429,300 copyright registrations to ensure that screenshots of its 135-minute movie could not be expropriated by copyright pirates. Plaintiff here would need to register 258 registrations (given that the length of the video is 4 minutes and 18 seconds).

Alternatively, to secure proper copyright protection, Plaintiff would need to break up a single registration into 258 separate JPG files, one for each frame of the Video. This is an untenable result which warrants the Court's reconsideration.

**POINT IV: THE COURT OVERLOOKED THAT STATUTORY DAMAGES MAY BE AWARDED WHERE THE REGISTRATION IS OBTAINED WITHIN THREE MONTHS OF THE INITIAL DATE OF PUBLICATION (EVEN WHERE THE EFFECTIVE DATE OF REGISTRATION IS SUBSEQUENT TO THE INFRINGEMENT DATE)**

In footnote three of its Order, the Court concluded that Plaintiff's present action would not qualify for statutory damages under the Copyright Act because the infringement occurred eight days before the effective date of registration. *See* Order, p. 6, fn. 3 ("[u]nder 17 U.S.C. § 412, a plaintiff may not recover statutory damages or attorney's fees for any infringement commenced before the effective date of a copyright's registration . . . . In this case, the alleged infringement occurred on April 16, 2017, before the April 24, 2017 effective date of the copyright registration." (internal citation and quotations omitted)).

The Court's conclusion stands in conflict with the express language of the statute, which provides that statutory damages and attorneys' fees may be awarded where the work is registered within "3 months after the initial publication of the work…" 17 U.S.C. § 412. Here, because the registration was obtained within 3 months after the initial publication of the Video, statutory

damages and attorneys' fees are available even though the infringement took place several days before the effective date of registration.

## CONCLUSION

Based on the foregoing, the Court should grant Plaintiff's motion for reconsideration or reargument, vacate its Order [Dkt. #21] and direct the Clerk of Court to restore the case to calendar so as to allow the parties to proceed with discovery.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

**/richardliebowitz/**
Richard Liebowitz, Esq.
11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580

*Counsel for Plaintiff Lukasz Rudkowski*