**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LUKASZ RUDKOWSKI,

                                    Plaintiff,                    Docket No. 17-cv-3647 (DAB-JCF)

            - against -

                                                                 ECF CASE

MIC NETWORK, INC.

                                    Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR ATTORNEYS' FEES AND SANCTIONS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................. iv

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 2

LEGAL STANDARD ....................................................................................................... 3

ARGUMENT ................................................................................................................... 4


**POINT I:   PLAINTIFF'S CLAIM IS OBJECTIVELY REASONABLE ............................... 4**

  A.  Plaintiff's Claim Has Undeniable Factual Support ............................................. 5

  B.  Plaintiff's Claim is Also Supported by Longstanding Second Circuit Law (and the Law of Sister Circuits) ..................................................................................................... 6

  C.  Defendant's Reliance on *Kanongaata* is Misplaced ............................................. 8


**POINT II:   PLAINTIFF'S CLAIM RAISES UNSETTLED AND NOVEL ISSUES OF COPYRIGHT LAW IN THE CONTEXT OF SOCIAL MEDIA .................... 12**

**POINT III:   PLAINTIFF'S INFRINGEMENT SUIT IS PROPERLY MOTIVATED ...... 12**

  A.  Plaintiff's Counsel Serves a Valuable Public Interest By Seeking to Strictly Enforce Federal Copyright Law ..................................................................................... 13

  B.  Plaintiff's Suit Seeks to Establish a Fully Functioning Licensing Market for Commercial Use of Images Taken From Social Media ......................................................... 13

  C.  Because There Exists No Other Venue In Which to Vindicate His Rights, Plaintiff Cannot Be Faulted That The Cost of Litigation May Exceed the Amount of Damages ............... 14


**POINT IV:   AN AWARD OF ATTORNEYS' FEES WILL NOT PROMOTE THE PURPOSE OF THE COPYRIGHT ACT .......................................................... 17**

  A.  Fee-Shifting Will Frustrate the Purpose of the Copyright Act By Encouraging the Unauthorized Use of Content Taken From Social Media and By Reducing the Quantity and Variety of Works Introduced to Market ...................................................................... 17

  B.  Fee-Shifting is Not Justified to Compensate Defendant or Deter Suits Brought by Individual Photographers or Videographers ...................................................................... 18

**POINT V:   DEFENDANT'S MOTION FOR SANCTIONS SHOULD BE DENIED......... 19**

A.  Defendant Has Failed to Show "Bad Faith" Required for Imposition of Sanctions Under 18 U.S.C. § 1927 ........................................................................................................... 19

B.  Defendant Has Failed to Show "Bad Faith" Required for Imposition of Sanctions Under the Court's Inherent Power ............................................................................................... 20

CONCLUSION ..................................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

*Ariel(UK) Ltd. v. Reuters Grp. PLC*,
    05-cv-9646 (JFK), 2007 WL 194683, at *5 (S.D.N.Y. Jan. 24, 2007)...................................18

*Baker v. Urban Outfitters, Inc.*,
    431 F. Supp. 2d 351,357 (S.D.N.Y. 2006) *aff'd*, 249 F. App'x 845 (2d ...................................3

*Bell v. Taylor*,
    No. 1:13-CV-00798-TWP, 2014 WL 902573, at *2 (S.D. Ind. Mar. 7, 2014)........................13

*Berry v. Deutsche Bank Trust Co. Am.*,
    632 F. Supp. 2d 300, 305 (S.D.N.Y.2009) ...................................................................................5

*Bridgeport Music, Inc. v. WB Music Corp.*,
    520 F.3d 588, 593 (6th Cir. 2008). ............................................................................................17

*Bryant v. Media Right Productions, Inc.*,
    603 F.3d 135, 144 (2d Cir. 2010)................................................................................................4

*Campbell v. Acuff Rose Music, Inc.*,
    510 U.S. 569, 577, 114 S.Ct. 1164, 1170-71 (1994) ..................................................................9

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*,
    150 F.3d 132, 137 (2d Cir. 1998).................................................................................................5

*Chambers v. Nasco*,
    501 U.S. 32, 45 (1991)..............................................................................................................20

*DLC Management Corp. v. Town of Hyde Park*,
    163 F.3d 124, 136 (2d Cir. 1998)..............................................................................................21

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
    307 F.3d 197, 208 (3d Cir. 2002)........................................................................................passim

*Eisenschiml v. Fawcett Publications, Inc.*,
    246 F.2d 598, 604 (7th Cir. 1957) ............................................................................................10

*Encyclopedia Britannica Educational Corp. v. Crooks*,
    542 F.Supp. 1156, 1186-87 (W.D.N.Y.1982)...........................................................................11

*Ets–Hokin v. Skyy Spirits, Inc.*,
    225 F.3d 1068, 1074-76 (9th Cir. 2000) .....................................................................................8

## CASES

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340, 361 (1991)........................................................................................ 5

*Fogerty v. Fantasy, Inc.,*
    510 U.S. 517,535 n.19 (1994)................................................................................ 3

*Hallfordv. Fox Entm't Grp., Inc.,*
    12-cv-1806 (WHP), 2013 WL 2124524, at *1 (S.D.N.Y. Apr. 18, 2013)................ 5

*Janik v. SMG Media, Inc.,*
    No. 16-cv-7308 (JGK), 2018 WL 345111, at *14 (S.D.N.Y. Jan. 10, 2018) .......... 15

*Jewelers' Circular Pub. Co. v. Keystone Pub. Co.,*
    274 F. 932, 934 (S.D.N.Y. 1921)........................................................................... 8

*Kanongataa v. Am. Broad. Companies, Inc.,*
    No. 16-CV-7382 (LAK), 2017 WL 4776981, at *1 (S.D.N.Y. Oct. 4, 2017) .......... 8

*Kanongataa v. Am. Broadcastingcompanies, Inc.,*
    No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017)........ 8

*Knitwaves, Inc. v. Lollytogs Ltd.,*
    71 F.3d 996, 1011 (2d Cir. 1995)........................................................................... 3

*Lotus Dev. Corp. v. Borland Int'l, Inc.,*
    140 F.3d 70, 75 (1st Cir. 1998)............................................................................... 10

*Malibu Media, LLC v. Doe,*
    No. 15 CIV. 4369 AKH, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015)........... 16

*Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001) ........................ 3, 4

*Miller v. Facebook, Inc.,*
    1 0-cv-264 (WHA), 2010 WL 2198204, at * 1 (N.D. Cal. May 28, 2010) ............... 11

*Milltex Indus. Corp. v. Jacquard Lace Co.,*
    55 F.3d 34, 38 (2d Cir.1995)................................................................................... 19

*Minden Pictures, Inc. v. John Wiley & Sons, Inc.,*
    No. C-12-4601 EMC, 2014 WL ............................................................................. 15

*MiTek Holdings, Inc. v. Arce Eng'g Co.,*
    198 F.3d 840, 842-43 (11th Cir. 1999) .................................................................. 10

## CASES

*Mktg. Tech. Sols., Inc. v. Medizine LLC*,
  No. 09 CIV. 8122 (LMM), 2010 WL 2034404, at *3 (S.D.N.Y. May 18, 2010)..................... 6

*Morris v. Guetta*,
  2013 WL 440127, *3 (CD. Cal. Feb. 4, 2013)........................................................ 8

*Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*,
  264 F.3d 622, 639-40 (6th Cir. 2011) ............................................................. 10

*Neitzke v. Williams*,
  490 U.S. 319,325 (1989)............................................................................ 5

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*,
  166 F.3d 65 (2d Cir. 1999) ………………………………………………………………passim

*Norbay Music, Inc. v. King Records, Inc.*,
  249 F. Supp. 285, 289 (S.D.N.Y. 1966) ............................................................ 11

*Novelty Textile Inc.* v. Wetseal Inc.,
  2014 WL 12603499, at *4 (C.D. Cal. Oct. 22, 2014)............................................... 15

*Oliveri v. Thompson*,
  803 F.2d 1265 (2d Cir. 1986)...................................................................... 19

*Penguin Books US.A. Inc. v. New Christian Church of Full Endeavor, Ltd.*,
  96-cv-4126 (RWS), 2004 WL 728878, at *3 (S.D.N.Y. Apr. 6, 2004)............................... 5

*Psihoyos v. John Wiley & Sons, Inc.*,
  11-cv-1416 (JPO), 2013 WL 1285153, at *5 (S.D.N.Y. Mar. 29, 2013) *reconsideration
  denied*, 11-cv-1416 (JPO), 2013 WL 4441475 (S.D.N.Y. Aug. 20, 2013) ............................. 19

*Revson v. Cinque & Cinque, P.C.*,
  221 F.3d 71 (2d Cir.2000)......................................................................... 20

*Sakon v. Andreo*,
  119 F.3d 109, 114 (2d Cir.1997).................................................................. 21

*Schlaifer Nance & Co. v. Estate of Andy Warhol*,
  194 F.3d 323, 338 (2d Cir. 1999).................................................................. 21

*Sheldon v. Metro–Goldwyn Pictures Corp.*,
  81 F.2d 49, 56 (2d Cir.1936)..................................................................... 6, 7

## CASES

*Silberstein v. Fox Entm 't Grp., Inc.*,
   536 F. Supp. 2d 440,444 (S.D.N.Y. 2008) ............................................................. 4

*Torah Safi Ltd. v. Drosnin*,
   00-cv-5650, 2001 WL 1506013, at *5 (S.D.N.Y. Nov. 27, 2001)...................................... 12, 20

*United States v. International Bhd. of Teamsters*,
   948 F.2d 1338, 1345 (2d Cir. 1991)...................................................................... 21

*Viva Video, Inc. v. Cabrera*,
   9 F. App'x 77, 80 (2d Cir. 2001) ........................................................................ 4

## STATUTES

17 U.S.C. § 102(a)(5).......................................................................................... 8
17 U.S.C. § 505............................................................................................ passim
18 U.S.C. § 1927............................................................................................. 19

## TREATISES

Melville B. Nimmer & David Nimmer,
   NIMMER ON COPYRIGHT § 14.10[D][2] .................................................................. 3

1 Melvin B. Nimmer & David Nimmer,
   NIMMER ON COPYRIGHT § 2.08[E][1], at 2–130 (1999) ............................................. 8

## INTRODUCTION

Plaintiff Lukasz Rudkowski ("Plaintiff" or "Rudowski"), via counsel, respectfully submits this memorandum of law in opposition to Defendant Mic Network, Inc.'s Motion for Attorneys' Fees and Sanctions. Defendants' attorney fee application should be denied in its entirety because Plaintiff's claim is objectively reasonable, raises novel and unsettled questions that help clearly demarcate the boundaries of copyright use in the digital age, and is properly motivated. Accordingly, fee-shifting will not further the purposes of the Copyright Act.

With respect to the facts, Defendant cannot dispute that Plaintiff's claim is factually cognizable. Indeed, the Court previously ruled that "[i]n a qualitative sense, Defendant's Photograph is an exact screenshot of Plaintiff's Video." *See* Decision and Order, Dkt. #21 p. 9. Plaintiff's lawsuit is therefore objectively reasonable as to the facts pled to support the claim.

With respect to legal support, Plaintiff's complaint relies on a series of Second and Third Circuit cases which hold that under U.S. Copyright law, the *de minimis* defense cannot be reduced to "simple, bright line rules" based on a quantitative inquiry alone. Qualitative use that is material forecloses (or should foreclose) the defense as a matter of law. Because the qualitative value of the Defendant's use in this case should necessarily outweigh the quantitative measure in the analysis, Plaintiff had good cause to bring suit.

Further, Plaintiff's suit was properly motivated by the need to vindicate the public interest, deter future infringement, and establish a fully functioning licensing market for content expropriated from social media. These are proper causes for the artistic community to litigate. Accordingly, because fee-shifting will be counterproductive to the purpose of the Copyright Act, Defendant's motion should be summarily DENIED.

## BACKGROUND

Plaintiff Rudkowski is a professional video journalist who is the founder of We are Change, an independent media organization dedicated to documenting and exposing corruption. [Compl. ¶ 5] On April 15, 2017, Rudkowski was covering an event in his professional capacity in Berkley, California. The event was billed as a pro-free speech protest, and officials also expected a significant counter- protest by a group that opposed hate-speech. The two opposing groups of protesters clashed violently. The event garnered significant national attention. During the event, a prominent and controversial figure, Nathan Damigo punched a female protestor. Plaintiff used his skills and talent as a videographer to clearly record the woman protestor getting punched. [Compl. ¶ 7]. He had unique access, angle and opportunity to capture the moment.

On that same day, Plaintiff published a 4:18 minute video clip of the violent protest on his organization's YouTube channel. (the "Video") [Compl. ¶ 8 & Ex. A]  Rudowski then promptly and timely registered the video with U.S. Copyright Office. [Compl. ¶ 10 & Ex. B]. Defendant operates the website www.mic.com (the "Website") [Compl. ¶ 6]. On April 16, 2017, Defendant published its own article about the clashes at the protest entitled Berkeley riots: Video appears to show white supremacist Nathan Damigo punching protestor, Mic (Apr. 16, 2017) (see https://mic.com/articles/174306/berkeley-riots-video-appears-toshow-whitesupremacist- nathan-damigo-punchingprotester#.szclRqM5H.)

A screengrab from Plaintiff's Video (the "Photograph") was prominently featured in Defendant's article. Defendant expropriated the heart of the Video, as the Photograph depicted the precise moment that Nathan Damigo punched the female protestor. [Compl. ¶ 11 & Ex. C] Defendant did not have Plaintiff's permission or consent to publish any part of the Video and did not seek to obtain a license from Plaintiff. [Compl. ¶ 12.]

## **LEGAL STANDARD**

Section 505 of the Copyright Act states that:

> [i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party I as part of the costs.

17 U.S.C. § 505.

As the plain text of the statute makes clear, "[a]n award of attorney's fees and costs is not automatic but rather lies within the sole and rather broad discretion of the Court." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351,357 (S.D.N.Y. 2006) *aff'd*, 249 F. App'x 845 (2d Cir. 2007) (citing *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1011 (2d Cir. 1995)). The touchstone consideration in the awarding of fees or costs under § 505 is whether doing so furthers the purposes of the Copyright Act. *See Matthew Bender & Co. v. W Pub. Co.*, 240 F.3d 116, 124-25 (2d Cir. 2001) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517,535 n.19 (1994)); *see also* Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 14.10[D][2] ("The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act . . .")

In *Fogerty*, the Supreme Court cautioned that "[t]here is no precise rule or formula for making [attorneys' fees] determinations," but nonetheless identified "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" as relevant factors. *Fogerty*, 510 U.S. at 534 n.19; s*ee also Matthew Bender & Co.*, 240 F.3d at 21 (applying the *Fogerty* factors.

## ARGUMENT

**POINT I:    PLAINTIFF'S CLAIM IS OBJECTIVELY REASONABLE**

"[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001). The Second Circuit accords the objective reasonableness factor "substantial weight" in determinations whether to award attorneys' fees. *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). The "emphasis on objective reasonableness is firmly rooted in *Fogerty's* admonition that any factor a court considers in deciding whether to award attorneys' fees must be 'faithful to the purposes of the Copyright Act.'" *Matthew Bender & Co.*, 240 F.3d at 122 (citing *Fogerty*, 510 U.S. at 534 n.19). As such, awards of attorneys' fees under § 505 are not justified where a litigant's copyright claims are deemed objectively reasonable. *Id.* (reversing award of attorneys' fees on grounds that the legal position asserted was objectively reasonable).[1]

Claims are objectively unreasonable when they "have no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001); *see also Silberstein v. Fox Entm't Grp., Inc.*, 536 F. Supp. 2d 440,444 (S.D.N.Y. 2008) ("the courts of this Circuit have generally concluded that only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable") (quoting *Penguin Books US.A. Inc. v. New Christian Church of Full Endeavor, Ltd.*, 96-cv-4126 (RWS), 2004 WL

---

[1] *See also Harris Custom Builders Inc. v. Hoffmeyer*, 140 F.3d 728, 730-31 (7th Cir. 1998) (vacating award of fees because, inter alia, losing party's claims were objectively reasonable); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 74 (1st Cir. 1998) (affirming denial of fees because copyright holder's "claims were neither frivolous nor objectively unreasonable); *EMI Catalogue P'ship v. CBS/Fox Co.*, 1996 WL 280813, at *2 (S.D.N.Y. May 24, 1996) (holding that copyright owner's claim was "not so objectively unreasonable as to justify" an award).

728878, at *3 (S.D.N.Y. Apr. 6, 2004)).[2]  The "mere fact that a [party] has prevailed does not necessarily equate with an objectively unreasonable claim." *Berry v. Deutsche Bank Trust Co. Am.*, 632 F. Supp. 2d 300, 305 (S.D.N.Y.2009) (citation, quotation marks, and ellipsis omitted).

Here, Plaintiff has advanced an objectively reasonable claim under the Copyright Act because his claim has both factual and legal support.

## A.   PLAINTIFF'S CLAIM HAS UNDENIABLE FACTUAL SUPPORT

To establish a claim of copyright infringement, plaintiff must show two elements: (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998).

Plaintiff created the Video and posted it to his organization's YouTube channel.  [Compl. ¶ 8 & Ex. A]  Rudowski then promptly and timely registered the video with U.S. Copyright Office. [Compl. ¶ 10 & Ex. B].  On April 16, 2017, Defendant published its own article about the protest which prominently featured a Photograph depicting the precise moment that a white supremacist punched a female protestor. [Compl. ¶ 11 & Ex. C] Defendant did not have Plaintiff's permission or consent to publish any part of the Video and did not seek to obtain a license from Plaintiff. [Compl. ¶ 12.]

Here, Defendant does not challenge the facts underlying the elements of Plaintiff's claim. Nor can Defendant dispute that Plaintiff' claim is factually cognizable.  Indeed, the Court previously ruled that "[i]n a qualitative sense, Defendant's Photograph is an exact screenshot of

---

[2] Similarly, a complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319,325 (1989); s*ee also Hallfordv. Fox Entm't Grp., Inc.*, 12-cv-1806 (WHP), 2013 WL 2124524, at *1 (S.D.N.Y. Apr. 18, 2013) (an argument "is frivolous when there is indisputably absent any factual or legal basis'' for it); *Matthew Bender & Co.*, 240 ("an objectively unreasonable argument is not necessarily frivolous or made in bad faith." ).

Plaintiff's Video." *See* Decision and Order, Dkt. #21 p. 9.  Plaintiff's lawsuit is therefore

objectively reasonable as the facts pled to support the claim.

**B.    PLAINTIFF'S CLAIM IS ALSO SUPPORTED BY LONGSTANDING SECOND CIRCUIT LAW (AND THE LAW OF SISTER CIRCUITS)**

In *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65 (2d Cir. 1999), the

Second Circuit held:

> Copyright law does not admit of simple, bright-line rules. We do not intend to establish
> any principle that, as a quantitative matter, a work that copies twenty percent of a
> copyrighted work is never substantially similar . . . . It is not possible to determine
> infringement through a simple word count; <u>the quantitative analysis of two works must
> always occur in the shadow of their qualitative nature</u> . . .
>
> <u>[Plaintiff] is entitled to the separate legal protection of each of its articles</u>, and
> [defendant]'s failure to copy a larger percentage of [plaintiff]'s total works does not
> insulate it from liability. We also reject defendants' argument that any infringement
> was *de minimis* because 20 abstracts represent only a tiny fraction of the 17,000 abstracts
> they published in 1997. As Learned Hand declared long ago, "<u>no plagiarist can excuse
> the wrong by showing how much of his work he did not pirate</u>." *Sheldon v. Metro–
> Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.1936).

166 F.3d at 71–72 (emphasis added).

Similarly, the Third Circuit has held that "[a] de minimis defense does not apply where

the qualitative value of the copying is material." *Dun & Bradstreet Software Servs., Inc. v. Grace

Consulting, Inc.*, 307 F.3d 197, 208 (3d Cir. 2002).  The Third Circuit's holding has been

adopted by courts in this Circuit. *See Mktg. Tech. Sols., Inc. v. Medizine LLC*, No. 09 CIV. 8122

(LMM), 2010 WL 2034404, at *3 (S.D.N.Y. May 18, 2010) (J. McKenna) (quoting *Dun &

Bradstreet* and noting that "[t]he smallness alone is not enough by itself to avoid liability.").

In his opposition brief to Defendant's motion to dismiss, Plaintiff cited the Second

Circuit decision of *Nihon* for the proposition that, as a matter of law, the *de minimis* defense

cannot be established by reference to a simple mathematical formula alone.  [P's Opposition

Brief, Dkt. #13, p. 12]. Indeed, *Nihon* articulated three legal standards that are applicable here:

First, *Nihon* holds that under U.S. Copyright law, the *de minimis* defense cannot be reduced to "simple, bright line rules" based on a quantitative inquiry alone. *Nihon,* 166 F.3d at 71–72.  Indeed, this holding is based in part on a legal principal first articulated by Judge Learned Hand over eighty years ago. *See Sheldon v. Metro–Goldwyn Pictures Corp.,* 81 F.2d 49, 56 (2d Cir.1936) ("no plagiarist can excuse the wrong by showing how much of his work he did not pirate.")

Second*, Nihon* instructs that *"the* quantitative analysis of two works must always occur in the shadow of their qualitative nature . . .," which means that the qualitative value of the use necessarily outweighs the quantitative measure in the analysis.  *Nihon*, 166 F.3d at 71–72.

Third, *Nihon* holds that no matter how small the expropriated work is relative to the size of the original work, where the expropriated work is itself "entitled to . . . separate legal protection," the de *minimis* defense fails. *Id.*

Here, Plaintiff's case is objectively reasonable under all three legal standards pronounced by the Second Circuit in *Nihon*.  Plaintiff's position that Defendant should not be shielded from liability for expropriating a single frame from Plaintiff's video is legally sound because the expropriated image was qualitatively material.  *Dun & Bradstreet*, 307 F.3d at 208; *Mktg. Tech. Sols.,* 2010 WL 2034404, at *3  Further, Plaintiff's position that a *de minimis* defense cannot be established solely based on the mathematical ratio between the duration of the Photograph and the duration of the Video also has received legal support.  *Nihon,* 166 F.3d 65; *Sheldon,* 81 F.2d at 56.  This is because "[i]t is not possible to determine infringement through a simple word count; the quantitative analysis of two works must always occur in the shadow of their qualitative nature . . ."  *Nihon,* 166 F.3d at 71–72.  Furthermore, because the Photograph as a standalone work is plainly entitled to be registered as a copyrighted "pictorial work" separate and

apart from the Video from which it was extracted,[3] the *de minimis* defense is not well-grounded. *Id.*

## C.    DEFENDANT'S RELIANCE ON *KONANGATAA* IS MISPLACED

Defendant's motion for attorneys' fees relies heavily on Judge Kaplan's decisions in *Kanongataa v. Am. Broadcastingcompanies, Inc.*, No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) and *Kanongataa v. Am. Broad. Companies, Inc.*, No. 16-CV-7382 (LAK), 2017 WL 4776981, at *1 (S.D.N.Y. Oct. 4, 2017), where attorneys' fees were awarded to prevailing defendants in a fair use case involving a screenshot of a video. Defendant's reliance on *Kanongataa* is misplaced for three reasons.

First, it is evident on the face of the *Kanongataa* decision, dated June 21, 2017, that Judge Kaplan dismissed the complaint based on the fair use defense. *See Kanongataa*, 2017 WL 2684067, at *1 ("On February 23, 2017, this Court granted defendants' motions to dismiss from the bench **on the ground that the uses complained of were fair uses**.") (boldface added) Judge Kaplan stated: "This was in each case a use squarely within the preambulatory portion of Section 107 of the Copyright Act, namely, criticism, comment, news reporting, which goes a significant part of the distance toward a conclusion of fair use." *Id.* at *1. In evaluating the third fair use factor under 17 U.S.C. § 107(3), Judge Kaplan further determined that the "the amount and substantiality of the portions used in relation to the copyrighted work as a whole are very small

---

[3] "Protection under the copyright statute extends to pictorial works[.]" *Rogers*, 960 at 306 (*citing* 17 U.S.C. § 102(a)(5)). "Even the slightest artistic touch will meet the originality test for a photograph." *Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074-76 (9th Cir. 2000); *see also Jewelers' Circular Pub. Co. v. Keystone Pub. Co.*, 274 F. 932, 934 (S.D.N.Y. 1921) (Judge Learned Hand) ("no photograph, however simple, can be unaffected by the personal influence of the author."); see also *Morris v. Guetta*, 2013 WL 440127, *3 (CD. Cal. Feb. 4, 2013) ("almost any[ ] photograph may claim the necessary originality to support a copyright merely by virtue of the photographers' personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken") (*citing* 1 Melvin B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 2.08[E][1], at 2–130 (1999)).

in each case and, in the case of COED Media, trivial and de minimis for sure." *Id.*  Thus, Judge Kaplan analyzed the *de minimis* nature of the use under the statutory framework provided by section 107, rather than based on a standalone *de minimis* defense.

This distinction is critical because section 107 requires courts to weigh all four factors before making a fair use determination. *See Campbell v. Acuff Rose Music, Inc.*, 510 U.S. 569, 577, 114 S.Ct. 1164, 1170-71 (1994) ("Nor may the four statutory factors be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright."). In contrast to *Kanongataa's* fair use ruling, the Court here dismissed Plaintiff's claim based on a standalone *de minimis* defense.[4]  These are different defenses.

Second, the screenshot at issue in *Kanongataa*, which depicted a snapshot from a live birth, was not material in the sense that it did not convey the entire narrative of the video from which it was extracted.  The *Kanongataa* defendants could have expropriated any random frame from the plaintiff's 45-minute video and it would not have mattered.  Here, in contrast, Defendant published the very heart and core narrative of Plaintiff's Video, namely the climatic moment of a white supremacist assaulting a female protester.

Third, to the extent that *Kanongataa* stands for the proposition that commercial publishers can exploit with impunity screenshots taken from videos posted to social media, then Plaintiff, and other content creators who are similarly situated, can file suit with the intent of

---

[4] Indeed, Judge Engelmayer recognized this key distinction in *Hirsch v. CBS Broadcasting Inc.*, a case which was cited in this Court's decision:

> The de minimis nature of an act of infringement can support dismissal on two other theories, neither germane here. A de minimis violation can occur when there is "a technical violation of a right so trivial that the law will not impose legal consequences"; this implicates violations so trivial that they are "rarely litigated." The de minimis nature of a violation also comes into play when a defendant claims fair use of a copyright and argues that the copyrighted "portion used was minimal and the use was so brief and indistinct as to tip the third fair use factor decisively against the plaintiff." Ringgold, 126 F.3d at 74-75.  2017 WL 3393845 at fn. 2 (boldface added)

overturning *Kanongataa.* If the *Kanongataa* decision grants publishers the unfettered right to expropriate whatever images it wants from social media, then the decision ought to be challenged until such time as an alternative view is adopted. *See* Fed.R.Civ. P. 11 (recognizing that attorneys may advance "a good faith argument for an extension, modification or reversal of existing law"); *see also* Rule 3.1 of the Model Rules of Professional Conduct (same).

In sum, Defendant has failed to demonstrate that Plaintiff's claim is objectively unreasonable as to factual or legal support. This *Fogerty* factor strongly weighs against Defendant's request for fees and costs.

## POINT II:    PLAINTIFF'S CLAIM RAISES UNSETTLED AND NOVEL ISSUES OF COPYRIGHT LAW IN THE CONTEXT OF SOCIAL MEDIA

Litigation of unsettled or novel issues of law should be encouraged because it helps clarify legal rights, thereby promoting the purposes of the Copyright Act. *See Fogerty,* 510 U.S. at 518 (" . . . it is peculiarly important that the law's boundaries be demarcated as clearly as possible.").[5] Accordingly, "cases with claims involving novel or complex issues do not warrant a court in making a finding of objective unreasonableness." *Brown v. Perdue*, 2006 WL 2679936 at *4 (S.D.N.Y. 2006); *see also Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663,666 (S.D.N.Y. 2001) ("Indeed, a court should not award attorneys' fees where the case is novel or

---

[5] *See also Murray Hill Publ'ns, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 639-40 (6th Cir. 2011) (reversing an award of attorneys fees under 17 U.S.C. § 505 because "at the time [the] litigation was before the district court, the law on certain relevant aspects of [the] lawsuit was unsettled."); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842-43 (11th Cir. 1999) (the interests of the Copyright Act are furthered by "encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure 'that the boundaries of copyright law [are] demarcated as clearly as possible' in order to maximize the public exposure to valuable works.") (quoting *Fogerty*, 510 U.S. at 526-27); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998) (when "close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries. But because novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff"); *Eisenschiml v. Fawcett Publications, Inc.*, 246 F.2d 598, 604 (7th Cir. 1957) (holding that award of attorneys' fees was an abuse of discretion by trial court where case involved "a very close question.")

close because such a litigation clarifies the boundaries of copyright law."); *Canal+ Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 683 (S.D.N.Y. 2011) (same); *Belair v. MGA Entm 't, Inc.*, 09-cv-8870 (SAS), 2012 WL 1656969, at *2 (S.D.N.Y. May 10, 2012) (same).[6]

"The advent of social media, and the internet generally, poses a myriad of issues for both copyright holders and those seeking to license or exploit their work." *Agence France Presse v. Morel*, No. 10-CV-2730 (AJN), 2015 WL 13021413, at *4 (S.D.N.Y. Mar. 23, 2015), *aff'd sub nom. Presse v. Morel*, 645 F. App'x 86 (2d Cir. 2016). "The federal courts have recognized that 'the whole area of social media presents thorny and novel issues with which courts are only now coming to grips.' *Id.* (internal quotation omitted); *see also Higgins v. Koch Dev. Corp.*, 11-cv-81 (RLY) (WGH), 2013 WL 3366278, at *2 (S.D. Ind. July 5, 2013) ("Postings on Facebook and other social media present a unique challenge for courts, due to their relative novelty and their ability to be shared by or with someone besides the original poster."); *Miller v. Facebook, Inc.*, l 0-cv-264 (WHA), 2010 WL 2198204, at * 1 (N.D. Cal. May 28, 2010) (noting the "slipperiness of enforcing intellectual property rights in a world where creating and dispersing infringing material to the public via social networking websites has become all too easy").[7]

---

[6] *See also Norbay Music, Inc. v. King Records, Inc.*, 249 F. Supp. 285, 289 (S.D.N.Y. 1966) ("The cases reveal that a fee allowance is rarely made where there are unsettled issues of law and fact."); *Encyclopedia Britannica Educational Corp. v. Crooks*, 542 F.Supp. 1156, 1186-87 (W.D.N.Y.1982) ("When faced with novel, unsettled, or complex problems in copyright cases, courts have refused to award attorneys' fees…" (citations omitted)).

[7] "Beyond the courts, academics and practitioners are similarly coming to terms with the implications of social media and traditional copyright law." *Agence France Presse*, 2015 WL 13021413, at *4 (citing Rebecca Haas, "Twitter: New Challenges to Copyright Law in the Internet Age," 10 J. Marshall Rev. Intell. Prop. L. 231, 248 (2010) (anticipating the challenges of enforcing copyright through media like twitter); Kirsten M. Koepsel, "Social Networks and the Uneasy Relationship with Copyright Law," Md. B.J., November/December 2012, at 20, 27 (advising practitioners on how to advise clients with social media and copyright concerns). In the context of the social media revolution, it is "all the more important that litigants be encouraged to test objectively reasonable legal theories in order to better develop the jurisprudential landscape. This weighs strongly against the awarding of attorneys' fees." *Id.*

Here, the case at bar asks whether a screenshot extracted from a creator's YouTube video constitutes a non-actionable *de minimis* use under the Copyright Act where the screenshot is qualitatively material, i.e., depicts the core narrative of the video's message, and readily observable. This is a novel and unsettled legal issue, the adjudication of which helps further define the contours of copyright law in the digital age. Accordingly, the purposes of the Copyright Act are not furthered by awarding fees and costs pursuant to § 505.

**POINT III:    PLAINTIFF'S INFRINGEMENT SUIT IS PROPERLY MOTIVATED**

Plaintiff's motivation for filing suit is also a factor the Court may consider under *Fogerty*, 510 U.S. at 534 n.19. A party is improperly motivated where it asserts claims "not because of [their] inherent merit," but rather because it seeks to "knowingly gamble[] on an unreasonable legal theory in order to achieve a secondary gain - in this case, the leveraging of a settlement . . ." *Torah Safi Ltd. v. Drosnin*, 00-cv-5650, 2001 WL 1506013, at *5 (S.D.N.Y. Nov. 27, 2001).

Here, Plaintiff's claim is properly motivated because this lawsuit seeks to vindicate the public interest by ensuring that the rights of individual photographers are protected against the corporate entities which seek to exploit their property without authorization. Plaintiff's claim is also motivated by a larger effort, spearheaded by Plaintiff's counsel, to establish a fully functioning licensing market for commercial use of images taken from social media.

Further, Defendant's accusations that Plaintiff or his counsel are a "copyright troll" is absurd. Plaintiff is a human being who, by his own creative and tenacious efforts, authored the content which Defendant has sought to brazenly exploit. By Congressional design, federal court is the only venue available for Plaintiff to adjudicate his intellectual property rights and, therefore, Defendant cannot be heard to complain about the cost of litigation relative to the value of the copyright.

**A.    PLAINTIFF'S COUNSEL SERVES A VALUABLE PUBLIC INTEREST BY SEEKING TO STRICTLY ENFORCE FEDERAL COPYRIGHT LAW**

"The Copyright Act is intended, not only for a plaintiff to obtain damages for infringement, but to deter the infringers and other potential infringers from infringing on copyrighted works." *Bell v. Taylor*, No. 1:13-CV-00798-TWP, 2014 WL 902573, at *2 (S.D. Ind. Mar. 7, 2014) (citing *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 231–33, 73 S.Ct. 222, 97 L.Ed. 276 (1952); *F.E.L. Pub'ns, Ltd. v. Catholic Bishop of Chi.*, 754 F.2d 216, 219 (7th Cir.1985)).

Plaintiff's counsel, Liebowitz Law Firm, PLLC, has filed more than 600 Cases in SDNY and EDNY since January 2016.  But the firm also represents over 350 clients, thousands of copyright registrations, and tens of thousands of copyrighted works. The number of lawsuits filed by the firm primarily shows that: (a) violation of the Copyright Act via unauthorized use of photographic materials is an epidemic; (b) the Liebowitz Law Firm is vindicating the public interest by ensuring that a proper licensing market exists for the work of photographers; and (c) individual photographers are retaining Liebowitz Law Firm to file federal lawsuits because there is no other means for them to enforce their rights, particularly given the Congressional failure to establish a Copyright Court to help streamline these types of claims.  *See* Point II.C, *infra*

**B.    PLAINTIFF'S SUIT SEEKS TO ESTABLISH A FULLY FUNCTIONING LICENSING MARKET FOR COMMERCIAL USE OF IMAGES TAKEN FROM SOCIAL MEDIA**

Since the advent of social media, commercial publishers have developed an unfortunate custom and practice of freely expropriating whatever images they want from social media sites, such as YouTube, Facebook and Twitter.  This practice has decimated the licensing market for such works as no commercial entity is going to pay for content that can be taken for free.  The Liebowitz Law Firm has spearheaded a movement to end this practice by securing legal

precedent which upholds copyright protections for works posted to social media. Federal courts which rule in photographers' favor will help create a fully functioning market whereby publishers must seek licenses from content generators who post to social media (without intent to necessarily profit from the work). This *bona fide* cause, which is properly represented by Plaintiff in this case, would be undermined by an award of attorneys' fees to Defendant.

C.    **BECAUSE THERE EXISTS NO OTHER VENUE IN WHICH TO VINDICATE HIS RIGHTS, PLAINTIFF CANNOT BE FAULTED THAT THE COST OF LITIGATION MAY EXCEED THE AMOUNT OF DAMAGES**

In October 2017, a bipartisan bill was introduced in the House of Representatives seeking to establish a Copyright Small Claims system. See COPYRIGHT SMALL-CLAIMS ENFORCEMENT (CASE) ACT OF 2017 [H.R. 3945]  Petapixel published a news article about the bill entitled: *House Bill Introduced for Copyright Small Claims*.

Significantly, the article explains that the motivation behind establishing a Copyright Small Claims system is to accommodate individual photographers (and other "mom-and-pop" copyright holders), who have traditionally been frozen out of federal courts due to the complexity and cost of litigation.

> Photographers in the United States are now one step closer toward seeing a copyright small claims system for pursuing infringements on a smaller scale. A new bipartisan House bill has introduced the CASE Act, which stands for the "Copyright Alternative in Small-Claims Enforcement Act of 2017."
>
> Photographer associations have long pushed for the creation of a copyright small claims system in the U.S. The argument is that the current system is more geared toward low volume, high-value content creators (e.g. filmmakers, music artists, authors) rather than high-volume, lower-value creators (e.g. photographers).
>
> "It may surprise you to learn that the majority of copyright holders in the United States are mom-and-pop businesses, the majority of which are professional photographers," the PPA stated last year. "Our current one-size-fits-all copyright system leaves out most visual artists."
>
> See https://petapixel.com/2017/10/05/house-bill-introduced-copyright-small-claims/.

14

To date, the CASE Act has not been passed by Congress. Until such time as Congress acts, aggrieved photographers have no choice but to file suit in the existing federal court system that's been provided to adjudicate their claims. Accordingly, litigants and courts should refrain from "victim shaming" photographers for seeking judicial relief, even where the value of their photographs may be low relative to other types of works, such as music or motion pictures.

Although Defendant labels Plaintiff's counsel a "copyright troll" (relying on a series of cases issued by Judge Cote), the number of cases filed, standing alone, cannot possibly support use of this derogatory label.  *See Janik v. SMG Media, Inc.*, No. 16-cv-7308 (JGK), 2018 WL 345111, at *14 (S.D.N.Y. Jan. 10, 2018) ("without specifics regarding the respective merits of these cases, filing volume does not necessarily signal an improper motivation in this case by counsel, let alone by Janik"); see also *Novelty Textile Inc.* v. Wetseal Inc., 2014 WL 12603499, at *4 (C.D. Cal. Oct. 22, 2014) ("Defendants submit evidence that Plaintiff has filed scores of copyright infringement actions in the Central District. Although this fact is consistent with Defendants theory, it is equally consistent with Plaintiff's being a successful design company that needs to protect its intellectual property from widespread infringement.").

In *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. C-12-4601 EMC, 2014 WL 1724478, at *8 (N.D. Cal. Apr. 29, 2014), the court rejected use of the "copyright troll" term on similar grounds:

> Wiley seeks to brand Minden with the odious "Copyright Troll" label. Docket No. 84, at 20. The Court finds such hyperbole unhelpful and slightly disingenuous. **Minden is not an entity which exists solely for the purpose of acquiring rights to pursue litigation.** Rather, as the agency agreements in this case show, they are a legitimate third-party licensing agent with longstanding ties to major photographers. Wiley itself recognizes this by its undisputed business dealings with Minden. That Minden attempted to aggregate the claims of its clients who have allegedly suffered at Wiley's hands is not, on its own, worthy of scorn.
>
> While the burden of defending frivolous and objectively unreasonable litigation may be

eleterious to the objectives of the Copyright Act, it is not the purpose of the Copyright Act "to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful." Thompkins v. Lil' Joe Records, Inc., No. 02–61161–CIV, 2008 WL 896898, at *6 (S.D. Fla. Mar. 31, 2008). **Nor can it be said that the business model of Minden is contrary to the purposes of the Copyright Act; there is value in facilitating the efficient licensing of legitimate copyright holders.**

2014 WL 1724478, at *8 (boldface added).

One of the fundamental elements of the "copyright troll' definition, as applied by the courts, is that copyright trolls sue only to extract settlements, but are not prepared to litigate cases to judgment. See *Malibu Media, LLC v. Doe*, No. 15 CIV. 4369 AKH, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) ("plaintiffs seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does . . . Malibu's motive is to use the federal courts only to obtain identifying information in order to coerce fast settlements.")

Here, in contrast, Plaintiff and the Liebowitz Law Firm is clearly prepared to bring Defendant to final judgment in this case. Indeed, Judge Forrest recently granted summary judgment in favor of Liebowitz's client in *Goodman v. Universal Beauty Prod. Inc.*, No. 17-CV-1716 (KBF), 2018 WL 1274855, at *1 (S.D.N.Y. Mar. 9, 2018). The Liebowitz Law Firm currently has three other summary judgment motions pending on the issue of liability for copyright infringement. *See, e.g., Ferdman v. CBS Interactive Inc.*, 17-cv-01317 (PGG) [Dkts. 30-42]; *Sands v. Complex Media, Inc.*, 17-cv-03993 (ALC-GWG) [Dkts. #27-31]; *Otto v. Hearst Communications, Inc.*, 17-cv- 04712 (GHW-JLC) [Dkts. #36-41]. Clearly, any notion that the Liebowitz Law Firm is filing "strike suits" or using judicial process to "shakedown" infringers is belied by the fact that it is prepared to vindicate the public interest by holding infringers accountable for their unlawful conduct.

**POINT IV:    AN AWARD OF ATTORNEYS' FEES WILL <u>NOT</u> PROMOTE THE PURPOSE OF THE COPYRIGHT ACT**

"It generally does not promote the purposes of the Copyright Act to award attorney fees to a prevailing defendant when the plaintiff has advanced a reasonable, yet unsuccessful claim." *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593 (6th Cir. 2008).  Here, an award of fees to Defendant will frustrate the purposes of the Copyright Act by encouraging the unauthorized use of content taken from social media and by reducing the quantity and variety of works introduced to market.  Further, fee-shifting is not warranted to compensate defendant or deter suits brought by individual photographers or videographers.

**A.    FEE-SHIFTING WILL FRUSTRATE THE PURPOSE OF THE COPYRIGHT ACT BY ENCOURAGING THE UNAUTHORIZED USE OF CONTENT TAKEN FROM SOCIAL MEDIA AND BY REDUCING THE QUANTITY AND VARIETY OF WORKS INTRODUCED TO MARKET**

"The primary objective of copyright is not to reward the labor of authors, but "[t]o promote the Progress of Science and useful Arts.'' *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 349-350, 11 S.Ct. 1282, 1290, 113 L.Ed. 2d 328 (1991); see also *Davis v. Blige*, 505 F.3d 90, 105 (2d Cir. 2007) ("The core purpose of the copyright law is 'to secure a fair return for an author's creative labor' and thereby 'to stimulate artistic creativity for the general public good.'") (citations omitted); *Diamond v. Am-Law Publ'g Corp.*, 745 F.2d 142, 147 (2d Cir. 1984) ("The principle purpose of the [Copyight Act] is to encourage the origination of creative works by attaching enforceable property rights to them.").

Here, an award of attorneys' fees would only encourage commercial publishers to expropriate screen shots from newsworthy videos, rather than engage in their own newsgathering efforts.  Allowing Defendant to shoplift images from social media will ultimately diminish the quantity and variety of content available to the public.  *See Berkla v. Corel Corp.*, 302 F.3d 909,

923 (9th Cir. 2002) ("It would be inconsistent with the Copyright Act's purposes to endorse Corel's improper appropriation of Berkla's product by awarding fees.").

Further, it will force copyright holders of audio-visual works to individually register each frame of a video. This would impose a severe economic and administrative burden on both copyright holders and the U.S. Copyright Office.

**B.**    **FEE-SHIFTING IS <u>NOT</u> JUSTIFIED TO COMPENSATE DEFENDANT OR DETER SUITS BROUGHT BY INDIVIDUAL PHOTOGRAPHERS OR VIDEOGRAPHERS**

"It is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement and not his successful opponent." *Fogerty*, 510 U.S. at 529, 114 S.Ct. 1023 (quoting W. Strauss, Damage Provisions of the Copyright Law, Study No. 31 (H. Judiciary Comm. Print 1960)) (internal quotation marks removed).   Here, Defendant could have settled the case for a reasonable amount prior to motion practice, but instead chose to defend in order to prove a point.  Having persuaded the Court that its expropriation was *de minimis*, its point has been proven.  Thus, there is no need to compensate Defendant for its decision to engage in motion practice as it has established legal precedent in favor of corporate publishers, which goes right to the bottom line because Defendant is still free to expropriate content without paying any licensing fees.

Further, there is no need for the Court to deter Plaintiff, or other individual photographers and videographers, who has promoted an objectively reasonable legal theory. *See Ariel(UK) Ltd. v. Reuters Grp. PLC*, 05-cv-9646 (JFK), 2007 WL 194683, at *5 (S.D.N.Y. Jan. 24, 2007) ("The Court recognizes that Defendants incurred considerable expense in defending the copyright claims. Nevertheless, an award of fees and costs would tend to prohibit potential future claimants from litigating questions of fact and law that are not objectively unreasonable and therefore would be contrary to the policies that underlie the Copyright Act."); *see also Psihoyos v. John*

*Wiley & Sons, Inc.*, 11-cv-1416 (JPO), 2013 WL 1285153, at *5 (S.D.N.Y. Mar. 29, 2013)

*reconsideration denied*, 11-cv-1416 (JPO), 2013 WL 4441475 (S.D.N.Y. Aug. 20, 2013)

(declining motion for fees because there was no "need to further deter Defendant's behavior" and

concluding "for the same reasons noted above with respect to objective unreasonableness . . . that

the compensation and deterrence purposes underlying the Copyright Act are adequately served

by the jury's award").

In sum, because the goals of the Copyright Act would not be further served by awarding

Defendant attorneys' fees and costs, the motion should be denied.


**POINT V:     DEFENDANT'S MOTION FOR SANCTIONS SHOULD BE DENIED**

Defendant also moves for sanctions under 18 U.S.C. § 1927 and the Court's inherent

power.  Defendant's request is redundant, harassing and lacks any evidentiary support.


**A.     DEFENDANT HAS FAILED TO SHOW "BAD FAITH" REQUIRED FOR IMPOSITION OF SANCTIONS UNDER 18 U.S.C. § 1927**

Sanctions imposed under section 1927 require "clear evidence" of bad faith conduct.  See

*Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986) (emphasizing the high threshold of improper

conduct that must be present in order to justify an award of attorneys' fees pursuant to § 1927).

The Second Circuit notes that it has "declined to uphold awards under the bad-faith exception

absent both 'clear evidence' that the challenged actions are entirely without color, and [are

taken] for reasons of harassment or delay or for other improper purposes' " and "a high degree of

specificity in the factual findings of [the] lower courts." *Id.* at 1272; see also *Milltex Indus. Corp.*

*v. Jacquard Lace Co.*, 55 F.3d 34, 38 (2d Cir.1995) ("[T]he court's factual findings of bad faith

must be characterized by a high degree of specificity.") (internal quotation marks omitted).

No such high degree of specificity is possible in the present case. Defendant has failed to show that Plaintiff's complaint is frivolous or motivated by an improper purpose, such as delay or harassment. Nor do the facts of this case satisfy the § 1927 standard set forth in *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71 (2d Cir.2000). There, the district court identified eleven different instances of sanctionable behavior by the attorney, including: (1) threatening to "tarnish" the reputation of opposing counsel and subject him to the "legal equivalent of a proctology exam"; (2) publicly accusing the opposing attorney of fraud; (3) threatening to interfere with other clients of the opposing attorney; (4) threatening to sue opposing counsel individually and seek discovery of his personal finances; and (5) threatening to send the court a letter accusing opposing counsel of criminal conduct. *Id.* at 77–78. The Second Circuit found that sanctions under § 1927 were still not warranted. *Id.* at 82.

It is clear that whatever the Defendant complains of here pales in comparison to the facts in *Revson*. See *Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 722 (S.D.N.Y. 2002) ("The conduct of attorneys here, even if it could be faulted in any respect, would still be far from the threshold that Revson establishes for imposing sanctions.").

**B.    DEFENDANT HAS FAILED TO SHOW "BAD FAITH" REQUIRED FOR IMPOSITION OF SANCTIONS UNDER THE COURT'S INHERENT POWER**

The federal courts' inherent power to sanction is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs... ." *Link v. Wabash R.R.*, 370 U.S. 626, 630 (1962). Due to the powerful nature of the courts' inherent power, the Supreme Court has advised that judges should exercise "restraint and discretion" in imposing sanctions. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). Sanctions imposed pursuant to the Court's inherent power require a clear showing of bad faith. *Chambers v. Nasco*, 501 U.S. 32, 45 (1991).

In *Chambers*, the Supreme Court set forth the "narrowly defined circumstances" under which federal courts have inherent power to assess attorney's fees against counsel. 501 U.S. at 45. These include the "willful disobedience of a court order," and when counsel has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* The Supreme Court also provided concrete examples of bad faith which would warrant imposition of attorneys' fees against counsel, including acts of fraud upon the Court, abuse of judicial process, delaying or disrupting the litigation, hampering the enforcement of a court order, or in cases where "the temple of justice has been defiled." *Chambers*, U.S. 501 at 45-46.

Since *Chambers*, the Second Circuit has consistently held that a finding of bad faith is required to justify sanctions under the inherent powers of the court. See, e.g., *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) ("this court has required a finding of bad faith for the imposition of sanctions under the inherent power doctrine."); *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir.1997) ("we have construed use of ... the court's inherent power to be authorized only when there is a finding of conduct constituting or akin to bad faith"); *Schlaifer Nance & Co. v. Estate of Andy Warhol*, 194 F.3d 323, 338 (2d Cir. 1999) (court's sanctions under inherent powers doctrine require "highly specific" finding of bad faith); *Milltex Indus. Corp.,* 55 F.3d at 39-41 (reversing sanction imposed on attorney because there was insufficient evidence of bad faith and because attorney's actions in representing client were neither "entirely without color [of legal legitimacy]" nor undertaken with "improper purposes"); *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (sanctions under inherent powers require finding of bad faith).

Here, once again, Defendant has failed to provide any evidence that Plaintiff or his counsel acted in bad faith. There is no evidence, for example, that Plaintiff committed fraud

upon the Court, abused judicial process, delayed or disrupted the litigation, or hampered the enforcement of a court order.  Defendant simply disagrees with Plaintiff's legal position.  That's not enough to support a sanctions award.   Moreover, Plaintiff's claim was properly motivated. *See* Point III, *supra*.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's application for attorneys' fees under 17 U.S.C. § 505, and sanctions, in its entirety.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

**/richardliebowitz/**
Richard Liebowitz, Esq.

11 Sunrise Plaza, Ste. 305
Valley Stream, NY 11580

*Counsel for Plaintiff Lukasz Rudkowski*